537 F.Supp. 355 (1981)
LLC CORPORATION, Plaintiff,
v.
The PENSION BENEFIT GUARANTY CORPORATION and St. Louis Union Trust Company, Defendants.
No. 80-1097C(4).
United States District Court, E. D. Missouri, E. D.
November 13, 1981.
On Motions January 27, 1982.
*356 Carroll J. Donohue, Robert J. Domrese, Charles E. Merrill, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., for plaintiff.
Thomas C. Walsh and Bruce C. Oetter, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., for Centerre Trust Co. of St. Louis.
Bruce D. White, Asst. U. S. Atty., U. S. Dept. of Justice, St. Louis, Mo., Lawrence F. Landgraff, Benefit Guaranty Corp., Washington, D. C., for Pension Benefit Guaranty Corp.
On Post-Trial Motions January 27, 1982.

MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court for a decision on the merits following a two-day bench trial on June 23 and 24, 1981. Plaintiff seeks declaratory and injunctive relief against defendants to recover assets remaining after termination of a pension plan. Defendant St. Louis Union Trust Company holds $250,000 in escrow pending the outcome of this suit.
Having considered the pleadings, trial testimony, exhibits, stipulations, and memoranda of the parties, and being fully advised in the premises, the Court hereby makes and enters the following findings of fact and conclusions of law.

Findings of Fact
1. Plaintiff LLC Corporation ("LLC") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in St. Louis County, Missouri. LLC Corporation was formerly known as Liberty Loan Corporation ("Liberty"). LLC is engaged in the consumer loan business and a number of other enterprises.
2. Defendant Pension Benefit Guaranty Corporation ("PBGC") is a wholly owned United States government corporation established under § 4002(a) of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1302 ("ERISA").
3. Defendant St. Louis Union Trust Company ("St. Louis Union") is a trust company organized and existing under the laws of the State of Missouri, with its principal office in the City of St. Louis, Missouri.
4. On or about December 17, 1957, the Board of Directors of Liberty adopted the Liberty Loan Employees' Pension Plan and Trust Agreement, hereinafter referred to as "the Plan" or "the Liberty Plan," effective January 7, 1958.
5. The Plan has been amended from time to time and is a defined benefit plan under 29 U.S.C. § 1002.
6. Funding for the Plan came partly from mandatory employee contributions. The Plan required the employer to make whatever contributions outside actuaries found necessary to provide adequate funding for the Plan.
7. The Liberty Loan Employees Pension Plan & Trust Agreement provided that if any balance of assets remained in the trust after satisfaction of all liabilities with respect to participants and retired participants, the trustees were to return the balance to the employer.
8. LLC Corporation (Liberty) at all relevant times maintained the principal office of the Plan at LLC's (Liberty's) place of business in St. Louis County, and St. Louis Union maintained its principal offices in the City of St. Louis.
9. From the date of its adoption to its termination, the Plan remained in full force and effect.
10. After the enactment of ERISA, Liberty was designated as the Plan Administrator. *357 St. Louis Union was appointed trustee for the Plan on October 27, 1975.
11. On January 27, 1976, by resolution of its Board of Directors, Liberty elected to terminate the Plan, effective December 31, 1975. Liberty eventually substituted for the Plan a different form of retirement benefit program.
12. On February 23, 1976, Liberty filed a notice of intent to terminate the Plan with PBGC pursuant to 29 C.F.R. § 2664. The notice set a proposed termination date of March 8, 1976, and represented that the Plan assets were believed to be sufficient to satisfy all nonforfeitable benefits under the Plan. The notice described the Plan Administrator as Liberty.
13. The assets held under the Plan at the time of termination were sufficient to discharge when due all obligations of the Plan with respect to guaranteed benefits for plan participants.
14. On or about June 30, 1976, PBGC submitted to Liberty a draft certification form titled "Plan Administrator's Certification of Sufficiency" for execution by the Plan Administrator. This draft was prepared by PBGC's Office of General Counsel.
15. Under § 4041 of ERISA, a plan administrator may not terminate a pension trust and distribute funds until he or she has received a notice of sufficiency from PBGC. At the time the LLC matter was handled, PBGC policy provided that no notice of sufficiency would be issued unless the Plan Administrator's certification of sufficiency contained a provision, satisfactory to PBGC, concerning the handling of residual assets.
16. PBGC's draft Plan Administrator's certification of sufficiency required Liberty to divide any residual assets of the Plan between the company and employees according to a formula set forth in the draft.
17. LLC objected to PBGC's proposed formula for division of residual assets between the company and employees on the ground that the formula was contrary to the provisions of the Plan and § 4044 of ERISA. LLC demanded that PBGC issue a notice of sufficiency without requiring LLC to accept PBGC's proposed formula for handling residual assets.
18. PBGC refused to issue a notice of sufficiency to permit Plan termination and distribution of benefits unless LLC's Plan Administrator's certification of sufficiency contained language, acceptable to PBGC, pertaining to disposition of residual assets.
19. In August of 1976, PBGC deferred its formal determination of sufficiency for ninety days.
20. On December 9, 1976, the Plan Administrator signed a Plan Administrator's certification of sufficiency declaring that:
1. All information and documents submitted to the Pension Benefit Guaranty Corporation (PBGC) in connection with the above-mentioned Plan have been examined by me and, to the best of my knowledge and belief, are true, correct and complete.
* * * * * *
5. Plan assets will be allocated in accordance with § 4044 of ERISA.
6. The distribution of assets of the trust fund remaining after satisfaction of paragraphs 3 and 4 above shall be in accordance with the requirements of § 4044(d)(2) of the Employee Retirement Income Security Act of 1974, and such distribution must be approved in advance by the Pension Benefit Guaranty Corporation or be made pursuant to a court order which is final and no longer subject to judicial review. Until the distribution is made, the Plan Administrator shall make arrangements, subject to approval by the Pension Benefit Guaranty Corporation, for holding in a prudent manner the assets of the trust fund remaining after satisfaction of paragraphs 3 and 4 above.
21. On December 13, 1976, PBGC issued a notice of sufficiency as described in § 4041(b) of ERISA, 29 U.S.C. § 1341(b). The notice found the assets of the Plan sufficient as of March 8, 1976, to discharge when due all obligations of the Plan with respect to guaranteed benefits. Issuance of *358 the notice of sufficiency permitted distribution of the Plan assets in accordance with § 4044 of ERISA, 29 U.S.C. § 1344.
22. In early 1977, the Plan Administrator directed St. Louis Union, as Plan trustee, to make distributions necessary to pay or provide for the Plan's termination benefits. St. Louis Union at LLC's direction, proceeded with an orderly liquidation of the Plan assets, and made disbursements to provide termination benefits.
23. The Plan assets were distributed as follows:

Cash in Fund $5,513,641.33
Paid to Participants 4,431,350.34
 _____________
Balance Remaining $1,082,290.99
Trustee Fees $6,566.45
Actuary Fees 8,060.43
Attorney Fees 9,530.00
Accountant Fees 5,520.00
Miscellaneous Fees 971.72
 _________
Total Disbursements -$ 30,638.69
 ______________
Total Assets $1,051,652.39
 ==============

24. St. Louis Union disbursed $201,136.23 of the residual of $1,051,652.39 to pay state and federal taxes after the Internal Revenue Service revoked the Plan's 1974 and 1975 tax qualification under §§ 401(a) and 501(a) of the Internal Revenue Code for discriminatory actions.
25. After distribution and tax payments, assets totalling approximately $850,000.00 remained.
26. The Plan Administrator represented in writing to each of the 522 Plan participants that any excess assets would be allocated in accordance with § 4044(d)(2) of ERISA.
27. PBGC determined that $202,000.00 of the residual assets should be returned to Plan participants. Based on figures supplied by Liberty to PBGC, PBGC calculated the percentage of residual assets attributable to employee contributions by taking the total employee contributions and dividing by the total cash value of the assets.
28. On or about June 30, 1977, Liberty and St. Louis Union entered into an escrow agreement by which $250,000.00 was deposited with St. Louis Union; Liberty agreed that it could not "order such funds paid out until it can show by written approval of [PBGC] ... or by final court order of a court of competent jurisdiction that Liberty has complied with Section 4044(d) of ... ERISA." St. Louis Union presently holds the sum of $250,000.00 under the terms of the escrow agreement.
29. On November 1, 1977, Thomas R. Slaughter, general counsel for Liberty, asserted "the company's right to the entire surplus because it was totally created by excessive contributions by the company over the years." He formally requested PBGC to certify that the distribution made to participants was correct and complete and that any surplus remaining after the distribution was the property of Liberty.
30. On December 22, 1977, Mr. Henry Rose, General Counsel of PBGC, responded to Liberty's request, stating that approximately $202,526.84 should be distributed to Plan participants, based on PBGC's formula. Rose indicated that, in accordance with the Plan Administrator's certification of sufficiency submitted by Liberty, all residual assets would be held in escrow until PBGC determined the proper application of § 4044(d)(2).
31. On or about January 6, 1978, PBGC approved the distribution of approximately $600,000.00 of the residual assets to Liberty. The remainder, approximately $250,000.00, is being held in escrow with the Plan trustee, where it remains pending the outcome of this action.
32. Testimony of witnesses for PBGC established PBGC's position that a portion of excess assets should be distributed to employees. Renae Hubbard, an attorney for the staff of the General Counsel of PBGC, testified as to the determination of excess assets under ERISA, and why PBGC's consistent position is that in joint contribution plans the employees are always entitled to some portion of excess assets. PBGC expressed this position in opinion letters of the General Counsel's office in other cases and in proposed regulations written by Ms. Hubbard. 45 Fed.Reg. 65259 (Oct. 2, 1981). The proposed regulation sets forth several formulae for allocation of excess assets in joint contribution plans. PBGC's *359 calculation in this case followed one of the formulae.
33. Mr. Graham, witness for LLC, testified to LLC's position that all of the excess assets belong to the employer. He testified that since the total contributions and attributed earnings on those contributions were far less than the total benefits paid out and that employee contributions and earnings were paid out before employer contributions and earnings, whatever remains after payment of all benefits under the Plan belongs to the employer pursuant to the Plan's provision for return of residual assets.

Conclusions of Law
1. The Liberty Loan Employees Pension Plan and Trust Agreement was a defined benefit pension plan of the type described in § 3 of ERISA, 29 U.S.C. § 1002.
2. This Court has jurisdiction over the parties and the subject matter of this action under § 4003(f) of ERISA, 29 U.S.C. § 1303(f).
3. Defendants Pension Benefit Guaranty Corporation and St. Louis Union Trust Company are properly joined as defendants in that LLC asserts against them jointly, severally, or alternatively, claims to relief with respect to the post-termination disposition of the residual assets of the pension plan, and questions of law and fact are common to the causes of action against both defendants.
4. The issue before this Court is whether LLC, as successor to Liberty, or the participants of the Plan, are entitled to the excess assets of the Plan under § 4044(d) of ERISA, 29 U.S.C. § 1344(d).
5. Section 4044(d) governs the distribution of residual assets of a single-employer defined benefit plan as follows:
(d)(1) Any residual assets of a single-employer plan may be distributed to the employer if 
(A) all liabilities of the plan to participants and their beneficiaries have been satisfied,
(B) the distribution does not contravene any provision of law, and
(C) the plan provides for such a distribution in these circumstances.
(2) Notwithstanding the provisions of paragraph (1), if any assets of the plan attributable to employee contributions remain after all liabilities of the plan to participants and their beneficiaries have been satisfied, such assets shall be equitably distributed to the employees who made such contributions (or their beneficiaries) in accordance with their rate of contributions.
6. The primary issue in this case centers around the meaning of whether any assets of the Plan "attributable to employee contributions" remain, triggering the equitable distribution requirement of § 4044(d)(2).
Plaintiff asserts that the plain meaning of § 4044(d)(2) is that only if a portion of the residual assets in a plan is attributable to employee contributions for some reason independent of § 4044(d)(2), then that portion should be distributed to employees. In other words, § 4044(d)(2) does not require that employees share in residual assets in all cases, but only when residual assets are in part "attributable to employee contributions." LLC then argues that since the evidence shows that the amount paid in satisfaction of all guaranteed benefits under the Plan far exceeds the contributions with accumulated interest of the employees, there are no residual assets attributable to employee contributions.
PBGC bases its interpretation of § 4044(d)(2) on the inability to identify what portion of the contributions and earnings attributable to the employer or the employee is paid out as benefits and what portion is left as residual assets. No one can identify which assets belong to whom because the contributions of employees and the employer are comingled and investments are made out of the comingled funds. PBGC argues that the legislative history of § 4044(d)(2) supports its position that, because the funds are comingled, employees should receive a portion of any residual assets remaining after termination.
*360 7. The Senate version of ERISA, in § 511, addressed the distribution of excess assets upon termination, providing that
any assets of the fund, attributable to employee contributions, remaining after complete satisfaction of rights of all beneficiaries accrued to the date of dissolution or termination shall be equitably distributed. 93d Cong., 1st Sess. § 511 (September 19, 1973), Legislative History of ERISA (GPO, 1976) ("Leg.Hist."), pages 3773-74.
The House version of ERISA was more specific than the Senate's concerning distribution of residual assets. Any assets remaining after satisfaction of all plan liabilities that were attributable to accumulated investment earnings on employee contributions would be ratably distributed to the employee contributors. H.R. 2, as passed by the House, 93d Cong., 2d Sess. § 112(d)(1) (February 28, 1974); Leg.Hist. page 3960.
The Conference Committee Report contains no explanation of § 4044(d)(2), but it is substantially similar to the Senate version as quoted above. (§ 511, supra.)
The only other relevant reference in the legislative history occurs in the report of the Senate Committee on Labor and Public Welfare, accompanying S.4. Commenting on a provision in S. 4 that is identical to § 511, supra, the report states as follows:
The Committee believes it is unfair to permit the complete recapture by employers of surplus funds in terminated contributory plans, without regard to the fact that contributions by the workers helped to generate the surplus. S.Rep.No. 127, 93d Cong., 1st Sess. 30 (April 18, 1973); Leg.Hist., page 616.
8. While the Court finds that the legislative history supports PBGC's position, it does not clearly define the meaning of "attributable to employee contributions" embodied in § 4044(d)(2). As shown by plaintiff at trial, employee contributions and earnings can be quantified in an accounting sense using certain assumptions.
The Court concludes, however, that in a close case such as this, when the positions of both parties have some rational basis, the Court must defer to the interpretation of the impartial government agency that has the responsibility for promulgating regulations interpreting the statutes and the requisite expertise to do so. "[T]he construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong." Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969). This deference is especially necessary where the issue involves the contemporaneous construction of a new law by the agency charged with its implementation. See, e.g., Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); American Federation of State, County and Municipal Employees v. City of Cleveland, 484 F.2d 339, 344-45 (6th Cir. 1976).
The Ninth Circuit recently stated that "the determination of the PBGC ... is entitled to great deference in the construction and application of ERISA." Connolly v. PBGC, 581 F.2d 729, 730 (9th Cir. 1978), cert. denied, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979). Therefore, unless the Court finds "compelling indications" that PBGC's interpretation is wrong, PBGC's interpretation must control. See Paden v. United States Department of Labor, 562 F.2d 470, 473 (7th Cir. 1977).
After careful consideration of all the evidence, the arguments of the parties, and the relevant law, the Court concludes that PBGC's allocation of residual assets in this case should prevail.
9. Plaintiff relies on In re C. D. Moyer Trust Fund, 441 F.Supp. 1128 (E.D.Pa.1977), aff'd, 582 F.2d 1273, 1275 (3d Cir. 1978). Accord Pollock v. Castrovinci, 476 F.Supp. 606, 616-17 (S.D.N.Y.1979), aff'd, 622 F.2d 575 (2d Cir. 1980). The plans involved in Moyer and Pollock, however, received their funding solely from employer contributions. Therefore, the Court does not find Moyer or Pollock controlling. Moyer is also distinguishable because the residual assets were *361 clearly the result of actuarial error. The evidence in this case does not clearly establish the reason or reasons for the existence of the residual.
Therefore, judgment will be entered in favor of defendant PBGC and against plaintiff LLC.
10. St. Louis Union, pursuant to the terms of the escrow agreement and a repayment agreement with Liberty, prays for costs and attorneys' fees in connection with this litigation other than legal fees expended to resist Liberty's attempts to recover the escrow fund. St. Louis Union did not resist Liberty's attempts to recover the escrow fund.
Under Missouri law, an agreement governing attorneys' fees is generally valid. Mo.Rev.Stat. § 484.130. See, e.g., State Farm Mutual Auto Insurance Co. v. Sabourin, 574 S.W.2d 8 (Mo.App.1978).
The Court concludes that St. Louis Union is entitled to recover its costs and reasonable attorneys' fees in connection with this action. St. Louis Union shall have ten days from the date of this order to submit an affidavit to this Court itemizing its costs and attorneys' fees.

JUDGMENT
In accordance with the Memorandum opinion of the Court filed this day which is incorporated into and made a part of this judgment,
IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that judgment be and the same is entered in favor of defendant Pension Benefit Guaranty Corporation and against plaintiff LLC Corporation, plus costs.
IT IS HEREBY FURTHER ORDERED that defendant St. Louis Union Trust Company distribute $202,526.84 plus interest in accordance with the Memorandum opinion of this Court.
IT IS HEREBY FURTHER ORDERED that defendant St. Louis Union Trust Company submit a bill of costs and attorneys' fees in accordance with the Memorandum opinion of this Court.

ON POST-TRIAL MOTIONS
This matter is before the Court on several post-trial motions. Plaintiff, LLC Corporation (LLC), moves for amendment of the Court's findings of fact, conclusions of law, and judgment of November 23, 1981, pursuant to Rule 52(b) of the Federal Rules of Civil Procedure. Defendant, St. Louis Union Trust Company,[1] (St. Louis Union), and its attorneys move for an award of attorney's fees against plaintiff.
The November 23, 1981, judgment directed defendant, St. Louis Union, to distribute $202,526.84, plus interest, from an escrow fund of residual assets after distribution of a terminated pension plan. LLC asks the Court to make further findings describing (1) the recipients of the distribution; (2) the method of calculating the distribution to the recipients; and (3) the applicable rate of interest and the dates of interest accrual.

I. Distribution of Assets.

Defendant, The Pension Benefit Guaranty Corporation (PBGC), points out in a memorandum that LLC is the administrator of the terminated plan. Therefore, LLC has a fiduciary responsibility to fairly administer the residual assets of the plan awarded to the beneficiaries. See 29 U.S.C. §§ 1101-1114; Amax Coal Co. v. NLRB, 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981).
After consideration of the arguments of the parties and a review of the record, the Court concludes that LLC, as plan administrator, has sufficient information with which it can distribute the residual assets belonging to the beneficiaries. Any questions about the pool of distributees or the method of distribution should be directed to PBGC, the agency charged with interpreting and applying ERISA. 29 U.S.C. §§ 1001-1461.
*362 The Court finds that the following procedure would aid in the final resolution of the issues raised in this case.
1. LLC, as plan administrator, shall file with the Court and deliver to the parties, by February 26, 1982, a proposed plan for distribution of the $202,526.84, plus interest, in residual assets.
2. PBGC shall file objections, if any, to the proposed plan by March 19, 1982.
3. If PBGC files objections, the Court will thereafter consider and rule on the objections.
4. If PBGC files no objections by March 19, 1982, LLC's plan shall be final and LLC shall direct distribution of the funds according to the plan.

II. Interest Rate.

LLC and PBGC disagree about the appropriate interest rate on the judgment and the date from which interest calculation should begin.
The Court finds that a recitation of the arguments of the parties is unnecessary. The Court ordered distribution of $202,526.84, "plus interest." The Court intended that post-judgment interest be paid pursuant to Mo.Rev.Stat. § 408.040. The parties' arguments about pre-judgment interest, therefore, are irrelevant, except for PBGC's argument that ERISA preempts state laws with respect to interest rates. PBGC cites as support 29 U.S.C. § 1144(a), which states that the provisions governing termination of pension plans "shall supercede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." The Court, after careful consideration, finds that Mo.Rev.Stat. § 408.040 does not "relate to any employee benefit plan" within the meaning of 29 U.S.C. § 1144, and, therefore, there is no preemption of the Court's award of post-judgment interest.

III. Attorney's Fees.

This Court's order of November 13, 1981, found St. Louis Union entitled to recover its costs and reasonable attorney's fees in connection with this action pursuant to the terms of the escrow agreement and the repayment agreement with LLC. On November 23, 1981, St. Louis Union's attorneys filed an application for attorney's fees and expenses totalling $9,513.43, describing the work performed and detailing the out-of-pocket expenditures.
There being no objection by LLC, the Court concludes that LLC pay $9,513.43 to St. Louis Union for attorney's fees and costs.

ORDER
A memorandum dated this day is hereby incorporated into and made a part of this order.
IT IS HEREBY ORDERED that plaintiff's motion to amend findings be and the same is granted in part and denied in part, in accordance with the accompanying memorandum.
IT IS HEREBY FURTHER ORDERED that plaintiff file with the Court and deliver to the parties a proposed plan for distribution of residual assets by February 26, 1982, in accordance with the accompanying memorandum.
IT IS HEREBY FURTHER ORDERED that defendant, The Pension Benefit Guaranty Corporation, file objections, if any, to the proposed plan by March 19, 1982, in accordance with the accompanying memorandum. If objections are filed, the Court will thereafter consider and rule on the objections. If no objections are filed by March 19, 1982, the proposed plan shall become final and plaintiff shall direct distribution of the funds, in accordance with the plan.
IT IS HEREBY FURTHER ORDERED that defendant St. Louis Union Trust Company's application for allowance of attorney's fees and expenses be and the same is approved in the amount of $9,513.43.
NOTES
[1] St. Louis Union has changed its name to Centerre Trust Company of St. Louis. For continuity, however, the Court will use the old name.