**GOULD, INC., Plaintiff-Stakeholder,**

v.

**PENSION BENEFIT GUARANTY CORPORATION, et al., Defendants-Claimants.**

**No. 81 Civ. 3715 (CBM).**

United States District Court, S.D. New York.

May 2, 1984.

Lord, Day & Lord by Robert Wilder, New York City, Winston & Strawn by Richard W. Austin, David L. Lee, Chicago, Ill., for plaintiff-stakeholder.

Lawrence F. Landgraff, Francis P. Grealy, Jr., New York City, for defendants-claimants.

## OPINION

MOTLEY, Chief Judge.

This interpleader action was filed by plaintiff-stakeholder Gould, Inc. (Gould) to determine the distribution of $100,000.00. Gould no longer contests its liability as to the $100,000.00 fund; pursuant to a consent order, the distribution of the fund is not in dispute either. The sole issues that remain are: (1) the claim by a single claimant-defendant that the $100,000.00 fund is subject to interest; and (2) Gould's claim for costs and attorneys' fees on defendant-claimant's claim for interest. Before the court now are motions for summary judgment by both plaintiff-stakeholder and defendant-claimant as to interest on the $100,000.00. Defendant-claimant Pension Benefit Guaranty Corporation (PBGC) seeks approximately $85,000.00 in interest. Gould in turn denies that it owes any interest on the $100,000.00. For the reasons set forth below, Gould's motion for summary judgment is granted, and defendant-claimant's motion for summary judgment is denied. Gould's motion for costs is granted.

## FACTS:

The $100,000.00 involved in this action represents Gould's guaranty of the obligations which Sonotone Corporation, a New York corporation, incurred in settling a dispute over the funding of Sonotone's pension plan. From 1969 through 1973, Gould and its wholly-owned subsidiary were the sole shareholders of Sonotone. After Gould sold its Sonotone stock to Pindyck Corporation (Pindyck), a dispute developed between Sonotone and Amalgamated Local 475, International Union of Electrical, Radio & Machine Workers, AFL–CIO (Union), which is a predecessor in interest of defendant-claimant PBGC. The dispute focused on Sonotone's failure to make required contributions to the employees' pension plan. That dispute was the subject of an arbitration in March 1975. The arbitrator found that Sonotone had failed to make certain contributions to the pension plan since 1966, and the Union was granted an award against Sonotone.

In November 1975, the Union sued Sonotone in New York state court to have the arbitration award confirmed and a judgment entered. In 1976, Sonotone, Gould, the Union and Pindyck entered into a settlement agreement. The agreement provided that Gould guaranteed Sonotone's obligations pursuant to this settlement to the extent of $100,000.00. The agreement further provided that Sonotone was to pay $188,000.00 into the pension fund.

Pursuant to the settlement agreement, the pension plan was to receive yearly payments from Sonotone commencing April 1976. The plan did not receive any of the scheduled payments; and in 1978, the Union sued Sonotone, Pindyck, and Gould to enforce the settlement agreement. In November 1978, Gould entered into an agreement with the law firm representing the defendant-claimant Union (the Guazzo firm) whereby Gould would pay $100,000.00 to the Union pursuant to its guaranty. In return for this payment, Gould was to receive releases from the Union and the individual claimants.

Pursuant to its agreement with the Guazzo firm, Gould forwarded draft releases to the Guazzo firm in January 1979. From January through the fall of 1979, Gould received assurances from the Guazzo firm that the firm was procuring the releases of the individual claimants. In the summer of 1979, the firm requested that Gould pay each claimant his prorated share of the $100,000.00, rather than paying the Union a lump sum. The parties then redrafted the releases to conform with this request. The law firm did not mention or suggest that Gould pay interest on the $100,000.00 throughout these protracted negotiations.

While the Guazzo firm continued to procure the last few releases in March 1980, PBGC (the trustee of the pension plan) notified Gould that it might claim a right to Gould's $100,000.00 guaranty of Sonotone's obligations. In its communications with Gould, PBGC requested that Gould not distribute any of the funds until Gould received further word from PBGC. PBGC formally claimed a right to the $100,000.00 in a letter dated April 3, 1981. PBGC did not claim any right to interest on this money.

Shortly thereafter, Gould filed the instant interpleader action. PBGC counterclaimed for interest. Gould and the defendants-claimants who appeared then filed a consent order on May 24, 1982, pursuant to which the defendants-claimants agreed that they would discharge Gould from all liability with respect to its guaranty upon Gould's tendering $100,000.00 to the Clerk of this Court (without prejudice to PBGC's claim for interest). PBGC signed a proposed order prepared by Gould's attorneys under which Gould would pay the Clerk $75,000.00 payable to PBGC, which the Clerk would immediately tender to PBGC, and a $25,000.00 check payable to the Clerk and to be invested in treasury bills and disbursable only upon order of the court. The other defendants-claimants have ceded to PBGC their claims to the extent of $100,-000.00, plus any possible right to interest. This order was filed in May 1982.

At this time, Gould seeks attorneys' fees and costs as part of its motion for summary judgment. Gould has relinquished an earlier claim for $12,000.00 which it alleged it had already paid pursuant to its guaranty. PBGC seeks interest on the $100,-000.00, to be computed at the average annual prime rate on $37,600.00 from April 16, 1976, on $37,600.00 from April 16, 1977, and on $24,800.00 from April 16, 1978.

In reply papers in its motion for summary judgment, PBGC for the first time raised the argument that section 514(a) of ERISA Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a), preempts the New York state laws which cover pension plans. Thus, defendant-claimant contends that New York's rule on prejudgment interest awarded to pension plans is superseded by ERISA and that this court has the discretionary power to create federal common law on the subject since ERISA is silent on how prejudgment interest would be computed.

In response, Gould contends that ERISA does not preempt state law in the instant case because New York's law on prejudgment interest has only an indirect effect on pension plans. Furthermore, Gould contends that the state law is a law of general application dealing with an important area of state concern. In the alternative, Gould contends that the lack of any general federal standard for interest would require the application of state law even if ERISA did preempt the state law governing interest.

DISCUSSION:

■ Pursuant to the March 11, 1976 Agreement, Gould guaranteed the obligations of Sonotone to the extent of $100,-000.00. Under New York law, interest on a surety is available only upon the surety's default. *Aetna Casualty & Surety Co. v. B.B.B. Construction Corporation*, 173 F.2d 307, 308–309 (2d Cir.), *cert. denied*, 337 U.S. 917, 69 S.Ct. 1158, 93 L.Ed. 1726 (1949). Thus, Gould is liable for interest on the $100,000.00 only if it breached its guaranty.

█ The record indicates, however, that Gould did not improperly delay in making payments and thereby breach its guaranty. The Union, which had been negotiating with Sonotone and Pindyck for payment through October 1978, filed suit only after Sonotone's assets were sold at a sheriff's sale. Shortly thereafter, Gould agreed to pay $100,000.00 to the Union pursuant to its guaranty. A considerable amount of time elapsed while the Guazzo firm procured the individual releases. Subsequent delays ensued when PBGC notified Gould that it might claim an interest in the $100,-000.00. Since Gould was uncertain as to whom it should make payment, it properly filed this interpleader action. *Tuzzeo v. American Bonding Co.,* 226 N.Y. 171, 177, 123 N.E. 142, 144 (1919). Gould then paid the $100,000.00 to the Clerk of this Court. Furthermore, Gould would not be liable for interest from the time the interpleader bond was filed. 173 F.2d at 309.

Defendant-claimant PBGC asserts that, regardless of state law, it is entitled to prejudgment interest pursuant to section 514(a) of ERISA, 29 U.S.C. § 1144(a), and the case law interpreting it. Section 514(a) provides in pertinent part:

> [T]he provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....

Whether or not Congress intended for ERISA to preempt any and all state laws whenever retirement plans are involved has been the subject of limited judicial interpretation. In *Alessi v. Raybestos-Manhattan, Inc.,* the Supreme Court stated that section 514(a) "demonstrates that Congress ... intended ... and meant to establish pension plan regulation as exclusively a federal concern." 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). The Court added that:

ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern. For the purposes of the preemption provision, ERISA defines the term "State" to include: "a State, any political subdivision thereof, or any agency or instrumentality, which purports to regulate, *directly or indirectly,* the terms and conditions of employee benefit plans covered by this subchapter."

*Id.* at 525, 101 S.Ct. at 1907 (emphasis in original).

PBGC places great reliance on the Court's language in *Alessi.* In addition, PBGC cites the Second Circuit's reasoning in *Delta Air Lines, Inc. v. Kramarsky,* 650 F.2d 1287 (2d Cir.1981), *aff'd* — U.S. —, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). In that case, the court held that Section 514(a) "is as sweeping as it seems," 650 F.2d at 1303, and that the legislative history supports a broad reading of the "relates to" phrase in section 514(a). *Id.* The Court noted that "a state law 'relate[s] to' employee benefit plans, and is thus subject to preemption, whenever it has a direct bearing on such plans." *Id.* In an earlier case, however, the Second Circuit had held that "a strict, literal construction [of section 514(a)] would necessarily lead to the unreasonable conclusion that Congress intended to preempt even those state laws that only in the most remote peripheral manner touch upon pension plans." *American Telephone and Telegraph Company v. Merry,* 592 F.2d 118, 121 (2d Cir.1979).

There is no legislative history or case law which pinpoints precisely how indirect or remote a state law must be in order to avoid the reach of section 514(a). In *Alessi,* the Supreme Court commented that it "need not determine the bounds of ERISA's preemptive language to find [the New Jersey statutory provision] an impermissible intrusion on the federal regulatory scheme."[1] 451 U.S. at 525, 101 S.Ct. at

---

1. In *Alessi,* the Court interpreted the 1977 amendment to New Jersey's Workers' Compensation Act, by which the right to workers' compensation could be set off against disability pension benefits or payments but could not be set off against employees' retirement pension benefits. N.J.Stat.Ann. § 34:15–29 (West Supp.1980–1981) (as amended by 1977 N.J.Laws, ch. 156). Thus, the relevant state law had a direct effect

1907. The Court noted that other courts had reached varying conclusions as to the meaning of ERISA's preemptive language in other contexts, but the Court expressed no views on the merits of those decisions. *Id.* at 525 n. 21, 101 S.Ct. at 1907 n. 21. Included in the Court's note was reference to the Second Circuit's holding in *Merry.*

After a consideration of the case law dealing with section 514(a), the District Court for the Eastern District of California concluded that:

> [I]t now seems settled that where the state law has only an indirect effect on the plan *and* where it is one of general application which pertains to an area of important state concern, the court should find there has been no preemption.

*Provience v. Valley Clerks Trust Fund,* 509 F.Supp. 388, 391 (E.D.Cal.1981). In that case, the court held that state laws on fraud and bad faith constituted important state concerns not to be preempted by ERISA. 592 F.Supp. at 392.

The California Court of Appeals held that the division of property upon divorce also is an important state concern, not to be preempted by ERISA. *In re Marriage of Campa,* 89 Cal.App.3d 113, 152 Cal.Rptr. 362 (1979), *appeal dism'd sub nom. Carpenters Pension Trust Fund v. Campa,* 444 U.S. 1028, 100 S.Ct. 696, 62 L.Ed.2d 664 (1980). Similarly, state community property laws have been held to be important state concerns that are not to be preempted by ERISA. *Employees Savings Plan of Mobil Oil Company v. Geer,* 535 F.Supp. 1052 (S.D.N.Y.1982); *Stone v. Stone,* 450 F.Supp. 919 (N.D.Cal.1978), *aff'd,* 632 F.2d 740 (9th Cir.1980), *cert. denied,* 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981).

■ In the instant case, the crux of the dispute between the parties focuses on the 1976 Agreement in which Gould became a guarantor of Sonotone's obligations up to $100,000.00. As such, the dispute between the parties is contractual. Regulation of contract falls within the realm of state law. The involvement of a pension plan is a remote rather than a central consideration in this case. The central factor is the contract negotiated at arms-length by Sonotone, Pindyck, Gould and the Union. Thus, this Court concludes that ERISA does not apply in the instant case because relevant state laws only in the most remote and peripheral manner touch upon pension plans. Since this Court holds that ERISA does not apply, there is no need to consider what standard of interest would be available under federal law.[2]

■ Finally, Gould has made a motion to recover court costs, including reasonable attorneys' fees. As a general rule, litigants must pay their own attorneys' fees absent statutory or contractual authorization. *Alyeska Pipeline Service Company v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975). Nonetheless, federal courts have exercised their equitable powers to permit a party who has preserved a fund for others to recover costs, either from the fund itself or directly from the other parties enjoying the benefit of the fund. *Id.* at 257–258, 95 S.Ct. at 1621–1621. Costs, including reasonable attorneys' fees, thus may be awarded in this Circuit to stakeholder-plaintiffs who have commenced interpleader actions. *Travelers Indemnity Company v. Israel,* 354 F.2d 488, 490 (2d Cir.1965); *Skandia America Reinsurance Corporation v. Schenck,* 441 F.Supp. 715, 730 (S.D. N.Y.1977).

■ There are several factors which affect a court's decision as to the award of costs. First, any undue delay by the stakeholder in filing an interpleader action can cause the court to deny costs to the stakeholder. *John Hancock Mutual Life Insur-*

on the pension plan involved, which in turn was subject to regulation under ERISA.

**2.** This Court notes that PBGC raised the same argument that ERISA preempts state laws with respect to interest rates in *LLC Corporation v. Pension Benefit Guaranty Corporation,* 537 F.Supp. 355, 362 (E.D.Mo.1982). In that case, the court held that the state law did not " 'relate to any employee benefit' within the meaning of 29 U.S.C. § 1144, and therefore, there is no preemption." *Id.* at 362.

*ance Company v. Doran,* 138 F.Supp. 47 (S.D.N.Y.1956). A court also may deny costs if a stakeholder is not a disinterested party in the interpleader action. *Stuyvesant Insurance Company v. Dean Construction Company,* 254 F.Supp. 102, 114 (S.D.N.Y.1966) (*citing Paul Revere Life Insurance Company v. Riddle,* 222 F.Supp. 867, 868 (E.D.Tenn.1963)).

■ In the instant case, Gould is a disinterested stakeholder. Gould relinquished an earlier claim for $12,000.00 when it filed its motion for summary judgment. As indicated above, the record supports a finding that Gould did not delay unduly in filing this interpleader action. Contrary to PBGC's contention that Gould delayed for five years before bringing this action, Gould was not aware of Sonotone's failure to pay the Union until 1978. At that time, Gould began negotiations with the Guazzo law firm to determine how the $100,000.00 payment should be made. As soon as PBGC firmly asserted its claim on the $100,000.00, Gould filed the instant action. By entering into an agreement with the defendant-claimants pursuant to the 1982 consent order whereby it was discharged from further liability, however, Gould waived the general right to recover costs incurred in an interpleader action. Its costs incurred in defending PBGC's counterclaim for interest, however, may be recovered. Accordingly, this Court holds that Gould is entitled to an award of costs, including reasonable attorneys' fees, incurred in the instant counterclaim.

These costs are to be paid by PBGC, who is the only remaining defendant-claimant pursuant to its agreement with the other defendant-claimants in February 1982, upon submission of an affidavit by Gould and approval by this Court in a separate order.

CONCLUSION:

For the reasons set forth above, plaintiff-stakeholder's motions for summary judgment and costs are granted. PBGC's motion for summary judgment is denied. Settle and submit judgment on 10 days notice. This case hereby is discontinued.