James **BRYANT, et al., Plaintiffs,**

v.

**INTERNATIONAL FRUIT PRODUCTS COMPANY, INC., Defendant.**

**No. C–1–84–45.**

United States District Court,
S.D. Ohio, W.D.

Jan. 22, 1985.

Paul H. Tobias, Cincinnati, Ohio, for plaintiffs.

Harold S. Freeman, C.J. DeMichelis, Cincinnati, Ohio, for defendant.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on defendant's Motion to Dismiss (doc. no. 5) and plaintiffs' Motion for a Partial Summary Judgment (doc. no. 30). The parties have filed extensive memoranda with supporting affidavits and documentation. Pursuant to the terms of Fed.R.Civ.P. 12(b)(6), the Court will consider defendant's motion as one for summary judgment, and dispose of it as provided in Fed.R.Civ.P. 56.

The material facts in this matter are few and are not seriously in dispute. Defendant employer maintained a defined benefit pension plan (Plan) for its employees from 1944 through 1982.[1] The Plan was funded solely by employer contributions. Defendant terminated the Plan on July 1, 1982, and disbursed approximately $61,000 in accrued retirement benefits to the Plan participants. A $138,997 surplus remained. There is no dispute that the plaintiffs, who represent 15 of the 60 Plan participants, have received all the defined benefits they are entitled to under the Plan. The issue instead is whether they are also entitled to a share of the surplus or whether that money reverts to the defendant.

---

**1.** For a definition of "defined benefit plan," see  29 U.S.C. § 1002(35) (1982).

Plaintiffs base their claim for the surplus on the following language contained in a 1959 version of the Plan.

5.3 In no event and under no circumstances shall any contributions to this Trust by the Employer, nor any of the Trust Estate or the income therefrom, revert to or be repaid to the Employer; and all amounts paid by the Employer to the Trustees shall be used and applied for the sole and exclusive benefit of the participants under this Trust or their beneficiaries or estates.

13.1 The Employer expressly reserves the right to amend this Trust from time to time, either on the motion of the Trustees, or upon the Employer's own initiative; provided, however, that no such amendment shall cause or permit any part of the Trust Estate to revert or be repaid to the Employer or be diverted to any purpose other than the exclusive benefit of the participants or their beneficiaries or estates.

In 1976, pursuant to the above section 13.1, defendant revised the Plan to comply with the newly enacted Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* That revision replaced sections 5.3 and 13.1 with sections 8.2 and 11.1, respectively.

8.2 It shall be impossible at any time prior to the complete satisfaction of all liabilities with respect to Members and their Beneficiaries under this Plan for any part of the Trust Fund to be used for, or diverted to, purposes other than the exclusive benefit of the Members and their Beneficiaries.

11.1 The Employer shall have the right to alter or amend this Plan at any time in whole or in part, provided that no amendment shall arise or permit any part of the Trust Fund to be used for or diverted to any purpose other than the exclusive benefit of the Members or their Beneficiaries, and provided further that no amendment shall serve to deprive any Member or Beneficiary of a deceased Member of any of the values to which he is entitled under this Plan with respect to contributions previously made.

On May 25, 1982, defendant's Board of Directors amended the termination section, section 11.2, to include the following language: "After fulfillment of all obligations provided for in this Section 11.2, any portion of the Trust Fund remaining as a result of actuarial error shall be returned to the Employer." (Doc. no. 5, Exhibit B). In the same action, defendant's Board ordered termination of the Plan effective July 1, 1982.

The termination of employee benefit plans is governed by ERISA. *See UAW v. Dyneer Corp.*, 747 F.2d 335 (6th Cir.1984). ERISA's general rule on plan termination is that "the assets of a plan shall never inure to the benefit of any employer." 29 U.S.C. § 1103(c)(1) (1982). One exception to the rule permits reversion of residual assets to the employer if the following three conditions are met: (a) all liabilities of the plan to participants and their beneficiaries have been satisfied, (b) the distribution does not contravene any provision of the law, and (c) the plan provides for such a distribution in these circumstances. *Id.* § 1344(d)(1)(A)–(C). The only condition that plaintiffs allege has not been met by defendant is (c).

Defendant argues that it satisfied the third condition above when, on May 25, 1982, it amended section 11.2 of the Plan to allow the recapture of surplus assets of the trust fund attributable to actuarial error. Plaintiffs' position is that the 1982 amendment violated sections 5.3 and 13.1 of the 1959 version of the Plan.

In deciding this issue, the Court is faced with the task of interpreting the language of the Plan. The plain language of the two sections relied upon by plaintiffs clearly prohibits the defendant from sharing in any of the assets of the Plan. An explanatory booklet distributed to the employees essentially parrots that language. (Doc. no. 39A, Exhibit E). Yet, until May of 1982, the Plan had no provision for dealing with any post-termination surplus. To resolve this ambiguity, defendant offers the

explanation that the "exclusivity" language of sections 5.3, 13.1, and later sections 8.2 and 11.1, is standard pension language mandated by the Internal Revenue Code. As evidence of that fact, defendant points to section 13.3 of the 1959 version that states, "[t]he Employer has created this Trust with the intent that it qualify within the terms and conditions of Section 401(a).... " (Doc. no. 5, Exhibit B). One of the conditions imposed by section 401(a) is that

"it is impossible, at any time prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust, for any part of the corpus or income to be ... used for, or diverted to, purposes other than for the exclusive benefit of his employees or their beneficiaries.... "

26 U.S.C. § 401(a)(2) (1982). An explanatory regulation states that

"[t]he intent and purpose of section 401(a)(2) of the phrase 'prior to the satisfaction of all liabilities with respect to employees and their beneficiaries under the trust' is to permit the employer to reserve the right to recover at the termination of the trust, and only at such termination, any balance remaining in the trust which is due to erroneous actuarial computations during the previous life of the trust."

Treas.Reg. § 1.401–2(b)(1).

Defendant's explanation of the "exclusivity" language of the 1959 version of the Plan is supported by two cases in which it was held that almost identical exclusivity language did not bar an amendment allowing the reversion of actuarial error to the employer. *See In Re C.D. Moyer Co. Pension Trust*, 441 F.Supp. 1128 (E.D.Pa.1977), *aff'd without op.*, 582 F.2d 1273 (3d Cir. 1978); *Washington-Baltimore Newspaper Guild v. Washington Star Co.*, 555 F.Supp. 257 (D.D.C.1983), *aff'd without op.*, 729 F.2d 863 (D.C.Cir.1984). *See also Pollock v. Castrovinci*, 476 F.Supp. 606 (S.D.N.Y.1979), *aff'd without op.*, 622 F.2d 575 (2d Cir.1980). *Washington-Baltimore Newspaper* and *C.D. Moyer* have been cit-

ed with approval by the United States Court of Appeals for the Sixth Circuit. *UAW v. Dyneer Corp.*, 747 F.2d 335, 337 (6th Cir.1984).

Plaintiffs cite three cases in support of their position. Such cases are readily distinguishable from the matter at hand and from both *Washington-Baltimore* and *C.D. Moyer*. In two of the cases, the employer's original plan included a provision for distribution of post-termination surplus to the participants. *Audio Fidelity Corp. v. Pension Benefit Guaranty Corp.*, 624 F.2d 513 (4th Cir.1980); *Delgrosso v. Spang & Co.*, 586 F.Supp. 177 (W.D.Pa. 1983). In the third case, the employee benefit plan contained no provision for reversion of surplus as required by 26 U.S.C. § 1344(d)(1)(C). *Kruzynski v. Richard Bros. Punch Co.*, 211 Pens.Rep. (BNA) D–8 (E.D.Mich.1978). These bars to reversion are not present here.

The exclusivity language of the sections relied upon by plaintiffs must be read in light of the ERISA provisions that mandated it. Those provisions have never prohibited reversion of actuarial error to the employer, nor do they in this case. The defendant here properly amended its Plan to provide for reversion and that amendment brought it in compliance with the requirements of 29 U.S.C. § 1344(a). The Court therefore holds that the Plan's past and present exclusivity language does not bar the reversion of Plan surplus to the defendant.

Plaintiffs have two more grounds to support their right to the Plan's surplus. The first is that the surplus does not qualify as actuarial error, but is instead the result of intentional overfunding. There are two replies to that argument. First, plaintiffs have provided no evidence of intentional overfunding sufficient under Fed.R.Civ.P. 56(e) to support this contention. Second, even if such evidence were available it would not be controlling since the words "actuarial error" have been defined by the Internal Revenue Service in a way that includes even intentional overfunding.

Actuarial error occurs "when fixed and contingent liabilities are discharged through the purchase of a contract or contracts from an insurance company which provides the benefits with respect to individuals for whom the liabilities are determined, *the remaining assets may be considered surplus arising from actuarial error....*" (emphasis added). Rev.Rul. 83–52, 1983–1 C.B. 87. *See also* Treas.Reg. § 1.401–2(b)(1). This definition has been approved by the Sixth Circuit. *UAW v. Dyneer Corp.*, 747 F.2d 335, 337 (6th Cir. 1984).

Plaintiffs' final ground for recovery is a request for equitable relief based on state law theories of unjust enrichment, breach of fiduciary duty, and promissory estoppel. The Court declines to provide such drastic relief for the following reasons. First, ERISA contains a provision expressly preempting "any and all state laws, insofar as they now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a) (1982). Without deciding whether this provision bars all equitable relief in ERISA cases, it is enough to discourage the use of state equitable remedies in all but the most compelling instances. Second, the plaintiffs have already received all the benefits they are entitled to under the Plan. Extraordinary equitable powers should not be exercised to provide plaintiffs with a windfall. To hold otherwise would undermine the policies behind the enactment of ERISA. As another court noted after allowing the reversion of actuarial error to an employer:

> This result is consistent with the policies underlying the enactment of ERISA. Employers will continue to fund their plans under ERISA guidelines, but will not be penalized for overfunding in "an abundance of caution" or as a result of a miscalculation on the part of an actuary. Thus, employees will continue to be protected to the extent of their specific benefits, but will not receive any windfalls due to the employer's mistake in predicting the amount necessary to keep the Plan on sound financial basis.

*In Re C.D. Moyer Co. Trust Fund*, 441 F.Supp. 1128, 1132–33 (E.D.Pa.1977).

Defendant's Motion for Summary Judgment (doc. no. 5) is GRANTED. Plaintiffs' Motion for Partial Summary Judgment (doc. no. 30) is DENIED.

IT IS SO ORDERED.