**Arnold CHAIT, et al., Plaintiffs,**

**v.**

**George K. BERNSTEIN, Defendant.**

**Civ. A. No. 85–2090.**

United States District Court,
D. New Jersey.

Sept. 8, 1986.

Neal F. Healy, West Caldwell, N.J., for plaintiffs.

Richard Whitney, Jones, Day, Reaves & Pogue, Cleveland, Ohio, for defendant.

HAROLD A. ACKERMAN, District Judge.

This suit was filed in May of 1985 by Arnold Chait, acting in his alleged capacity as trustee of the employee pension plan of Ambassador Insurance Company (hereinafter "Ambassador" or "the Company"). In his verified complaint, Mr. Chait has accused the Defendant George K. Bernstein of violating the federal Employees Retirement Income Security Act of 1974 (ERISA), primarily by seeking to terminate the pension plan in a manner which provided for the reversion of excess plan funds to Ambassador upon termination.

Plaintiff seeks to enjoin the defendant from taking any further action with respect to the Ambassador Pension Plan and from interfering with the assets of the plan. Defendant Bernstein, who has already taken steps to terminate the pension plan in accordance with pension plan provisions which he, himself, had added by amendment, seeks to have plaintiff's verified complaint dismissed with prejudice.

This Court has jurisdiction over the subject matter of this action under Section 502 of ERISA, 29 U.S.C. Section 1132 (1982) and under 28 U.S.C. Section 1331 (1982) which provides for federal jurisdiction over civil actions arising under the laws of the United States.

At the present time, I have before me plaintiff's motion for summary judgment and defendant's motion for judgment on stipulated facts. On April 14, 1986, the parties filed a final pretrial stipulation stating the facts of the matter on which they agreed, and further stating that no other material facts were in contest. Because defendant's motion seeks judgment based on the facts set out in the final pretrial stipulation, I treat defendant's motion as a motion for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is not to be granted unless, after all reasonable inferences are drawn in favor of

the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See Sames v. Gable,* 732 F.2d 49, 52 (3d Cir.1984). Because the parties' stipulations resolve any genuine issues of material fact, I now decide these opposing motions for summary judgment in reliance on the parties' final pretrial stipulation, their briefs and arguments, and the applicable law.

The facts relevant to the case at hand may be stated as follows: Until November of 1983, Ambassador was a property and casualty insurance company domiciled in Vermont which maintained its administrative offices in North Bergen, New Jersey. Arnold Chait, the plaintiff in this case, acted as chairman of the board, president, and chief executive officer of the company. In addition, Chait is the major stockholder of Ambassador's parent corporation, Ambassador Group, Inc. As a Vermont-domiciled insurer, Ambassador was subject to the regulatory supervision of the Vermont Commissioner of Banking and Insurance. *See* Title 8, Vermont Statutes Annotated.

On December 31, 1968, Ambassador established a qualified pension plan for its employees, entitled The Ambassador Insurance Company, Inc. Pension Trust (hereinafter "the pension plan" or "the plan"). At its inception, and as of November 10, 1983, the administrator of the plan was Ambassador, and its trustees were Arnold Chait and his wife, Doris Chait. At its inception and as of November 10, 1983, the Plan contained no express provisions regarding the disposition of excess funding of the plan.

On November 9, 1983, acting pursuant to his statutory authority, George Chaffee, then Commissioner of Banking and Insurance for the State of Vermont, filed suit in the Washington County, Vermont, Superior Court seeking to enjoin Ambassador from the further transaction of business, on the ground that the company was in "hazardous financial condition." (In re *Ambassador Insurance Company, Inc.,* Washington County Superior Court No. S–444 Wnc).

Pursuant to a stipulation entered into between the Commissioner and Ambassador's former management, the Vermont Superior Court on November 10, 1983 appointed the Commissioner receiver of Ambassador for the purpose of determining whether the company could be rehabilitated or must be liquidated.

In that order, which is still in effect, the Vermont Superior Court directed the Commissioner "take possession of the property of Ambassador, wherever situated, and conduct the affairs of Ambassador, subject to the supervision of this Court, for the purpose of the rehabilitation of Ambassador." (Order of November 10, 1983, at paragraph 1.) The order further expressly provided that "Ambassador" and its "officers, directors, trustees, employees and creditors"—thus including the plaintiff in this suit, Chait, and the Ambassador board of directors—"are enjoined from further transaction of the business of Ambassador" (paragraph 7), and further enjoined such persons "from bringing or further prosecuting any action or proceeding of any nature whatsoever, including matters in arbitration, against Ambassador, its assets or the Commissioner as Receiver, or his agents, or from in any way interfering with the Commissioner in his possession control and conduct of the affairs of Ambassador ..." (paragraph 9). The order further directed that the Commissioner appoint George K. Bernstein, the defendant in this litigation, as agent for the receiver "to take control of the assets and operations of Ambassador." (Paragraph 3). It was finally provided that if the Commissioner determined that rehabilitation of Ambassador was not feasible, he was to apply to the Vermont Superior Court for authority to liquidate the company. (Paragraph 5.)

Following an investigation into the financial condition and affairs of the company, the Commissioner on March 30, 1984 moved to liquidate Ambassador. His application to the Superior Court was accompanied by

an extensive report in which he detailed his findings, which included a determination that the company was insolvent by an amount conservatively estimated at $43 million, and which outlined the gross mismanagement of the company under the tenure of Mr. Chait. The application to liquidate was opposed by Ambassador's former management.

After a trial, the Vermont Superior Court on September 4, 1984, issued a ruling in which it found that Ambassador was insolvent by at least $45.6 million, and that its insolvency could well be $20 million higher than that figure. The Commissioner was ordered to submit a plan for the liquidation of the company. The liquidation of the company had been held in abeyance by the pendency of an appeal by Ambassador's former management to the Vermont Supreme Court. This Court has been informed today that on August 22, 1986, the Supreme Court of Vermont affirmed the Superior Court's September 4, 1984 liquidation ruling in all respects.

On April 4, 1984, Ambassador's receiver executed an amendment to the Ambassador pension plan (hereinafter "the first plan amendment"). That amendment provided that there would be no further accrual of benefits in the plan after December 31, 1983. The April 4th amendment did not purport to terminate the plan.

On December 9, 1984, after the Vermont Superior Court had directed Ambassador's liquidation, the receiver executed a further amendment to the plan (hereinafter the "second plan amendment") to ensure that a substantial amount of excess assets which would be available upon plan termination would inure to the benefit of Ambassador, rather than to plan participants and beneficiaries. The second plan amendment did not purport to affect in any way the rights of any plan beneficiaries to any of their vested benefits under the plan, but rather purported to address only the disposition of excess plan assets. As the parties have stipulated, plaintiff Chait is the principal beneficiary of the plan.

On December 19, 1984, the receiver filed a Notice of Intent to Terminate the plan with the Internal Revenue Service and the Pension Benefit Guaranty Corporation. The notice (Form 5310) indicated that the plan was to terminate on December 31, 1984 and that, after distribution of benefits as required under the plan, approximately $500,000 in surplus plan assets would be returned to Ambassador.

In May 1985, the Commissioner as the receiver filed a $50 million damage action in this court against, among others, plaintiff Chait, alleging fraud in Ambassador's financial reporting, negligent mismanagement, and breach of fiduciary duty. *See Bard v. Chait*, Civ. No. 85–2441.

On June 12, 1985, the receiver removed plaintiff and his wife as trustees of the plan and appointed as successor trustee The Merchants Trust Company of Burlington, Vermont.

On October 10, 1985, in an action brought before this Court, plaintiff Chait attempted to preliminarily enjoin defendant Bernstein, as agent for Ambassador's receiver, from removing Chait as trustee and from taking any further action with respect to the plan, and to secure a declaratory judgment stating that plaintiff Chait retain the pension plan assets until the final adjudication of this action. This Court denied plaintiff Chait the relief he sought.

Plaintiff Chait today presents three arguments in support of his motion for summary judgment. First, plaintiff contends that the defendant, acting as agent for Ambassador's court-appointed receiver, had no power under the appointment order of the Vermont Superior Court to amend the plan on April 4 or December 9, 1984, nor to take the steps plaintiff has taken to terminate the plan in accordance with ERISA termination provisions, 29 U.S.C. Sections 1341–1348 (1982). According to plaintiff, defendant required the approval of Ambassador's board of directors before defendant could take any of these actions.

Section 402 of ERISA, 29 U.S.C. Section 1102, (1982), requires that employee benefit

plans be maintained pursuant to a written instrument. The Ambassador pension plan has such an instrument, hereinafter referred to as the "plan document." Section 11.02 of the plan document provides that "The Employer shall have the right at any time, and from time to time by action of its Board of Directors, to modify, amend, or terminate this Plan in part or in whole...."

According to the terms of its own plan document, the Ambassador pension plan cannot be amended or terminated without board of directors' approval. The question thus arises whether defendant's unilateral actions on behalf of the Ambassador's receiver violated Section 11.02 of the plan document. Violation of the terms of the plan document would indeed bring defendant into conflict with ERISA and cast doubt on the validity of defendant's acts to amend and terminate the plan. *See* 29 U.S.C. Section 1102(b)(3) (plans must be amended in accordance with plan document procedures); 29 U.S.C. Section 1108 (1982) (distribution of plan assets following termination must be made in accordance with the plan document).

Whether defendant acted in contravention of Section 11.02 of the plan document depends upon the scope of the power granted defendant by the Vermont Superior Court. The Vermont Superior Court was empowered by Vermont law to grant the receiver complete and ultimate authority over Ambassador and all its affairs, subject only to the approval of the Superior Court itself. *See* 8 Vermont Statutes Annotated Sections 3600–3601.

The power of the Vermont Superior Court to shift control of the pension plan from Ambassador's former principals to Ambassador's receiver was not compromised by the fact that the plan is regulated by ERISA, because the receiver was appointed in accordance with Vermont's scheme of insurance company regulation, and a provision of the McCarran-Ferguson Act, 15 U.S.C. Section 1012(b) (1982), saves state regulation of "the business of insurance" from preemption by ERISA. *See*

*Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Therefore, to determine whether defendant had the power to amend and terminate the plan, we must refer to the appointment order of the Vermont Superior Court.

Plaintiff argues that the Vermont appointment order gives defendant power to manage the day-to-day affairs of Ambassador, and no more; that the order in effect put defendant in the place of Ambassador's management, but left the Ambassador Board of Directors intact and reserved to defendant none of the Board's powers. Thus, under the rubric of Section 11.02 of the pension plan document, defendant is merely the plan "Employer", and defendant's actions to amend and terminate the pension plan without board approval run afoul of Section 11.02 of the pension plan document, and consequently run afoul of ERISA.

After reading the appointment order of the Vermont Superior Court, I find that the Vermont Court granted defendant powers sufficiently broad in scope to allow defendant to amend and terminate the Ambassador pension plan unilaterally, without the approval of the Ambassador board of directors, and without violating the terms of pension plan document Section 11.02. The Vermont Court order appointed Ambassador's receiver to take possession of Ambassador's property and conduct its affairs, subject to the supervision of the Vermont Court. (Order of November 10, 1983, at paragraph 1.) The Court granted no other party the power to review the receiver's actions. The Court also enjoined Ambassador's directors, among others, from further transacting the business of Ambassador (paragraph 7). Finally, the Court instructed that its order be liberally construed in order to effect the rehabilitation of Ambassador "for the benefit of policyholders, creditors, and the general public." (paragrah 10.) These provisions of the Court's order compel the conclusion that the Vermont Superior Court granted defendant sufficient power to act under Section 11.02

of the pension plan document without approval of Ambassador's board of directors.

It is true that the Vermont Court did reserve to Ambassador's board the right to be notified and to object to any decision by the receiver to wind up the affairs of Ambassador or to sell any real property, physical plant, or equipment worth more than $25,000. But the Vermont Court left the deposed board no more than this right to be heard in limited circumstances. Any contrary interpretation of the Vermont Court's order would constitute an unduly restrictive view of that Court's intentions.

The receiver has been granted all power over Ambassador's business, subject only to court review and the occasional right of Ambassador's board to voice objections. The power defendant received must, therefore, include the employer's power and the board's power, as stated in plan document Section 11.02, to amend and terminate the pension plan.

It is not necessary to determine whether the Vermont Court's order in fact stripped the Ambassador board of its powers, and transferred those powers to defendant, or whether the order instead simply abrogated the traditional director/management corporate organization under which Ambassador formerly operated, and replaced management and board with a single control entity, the receiver. However one conceptualizes the transition Ambassador has undergone, the receiver has been placed in control. The fact that Section 11.02 of the plan document still makes a distinction between "Employer" actions and board approval is irrelevant. Defendant has been granted powers over the affairs of Ambassador sufficiently broad to allow it to act unilaterally in amending and terminating the Ambassador pension plan, without violating the controlling dictates of the pension plan document.

As his second argument in support of his motion for summary judgment, plaintiff Chait contends that by both controlling Ambassador in receivership and controlling Ambassador's pension plan, defendant Bernstein violates fiduciary duties which ERISA imposes on those who operate pension plans. Therefore, he contends that defendant's actions amending and terminating the plan should be nullified, and further actions by defendant regarding the plan enjoined.

In an opinion delivered earlier in this case, on October 10, 1985, rejecting plaintiff's motion for preliminary injunctive relief, I stated that ERISA does indeed impose upon defendant, as the party currently in control of the Ambassador pension plan, strict duties of fiduciary responsibility to plan participants and beneficiaries. Section 402(a) of ERISA, 29 U.S.C. Section 1102(a), provides that plans be controlled and managed by named fiduciaries. Section 8.01 of the Ambassador plan document designates Ambassador as the plan's named fiduciary. As a result, therefore, of the Vermont Superior Court Order ceding control of Ambassador to the Receiver, defendant now acts as fiduciary to the pension plan.[1]

Under Section 404 of ERISA, 29 U.S.C. Section 1104 (1982), defendant, as a fiduciary, must discharge his plan duties "solely in the interest of the participants and beneficiaries" of the plan. Furthermore, the order of the Vermont Superior Court appointing defendant to conduct Ambassador's affairs in the interest of policyholders, creditors, and the general public does indeed impose upon defendant duties of loyalty to parties other than pension plan participants and beneficiaries. Clearly defendant is wearing more than one hat in his role as Ambassador's receiver, and must act with diligence to insure that the potential for conflicts of interest is never in fact

1. Congress apparently anticipated and approved of the probability that employers would act as fiduciaries of their own plans. ERISA Section 408(c)(3), 29 U.S.C. Section 1108(c)(3), expressly allows plan fiduciaries to serve as officers, employees, agents, or other representatives of plan parties in interest. An employer is a plan party in interest. 29 U.S.C. Section 1002(14) (1982). Accord, *Dhayer v. Weirton Steel Div.,* 571 F.Supp. 316, 328 (N.D.W.V.), aff'd, 724 F.2d 406 (4th Cir.1983), cert. denied, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984).

fulfilled. *See also* 29 U.S.C. Section 1106 (1982) (expressly prohibiting fiduciary from dealing with plan assets in his own interest).

Despite the potential for conflicts of interest inherent in defendant's position, it is not clear that defendant has breached any ERISA-imposed fiduciary duties in the instant case. Defendant argues that the decisions by an employee in control of a pension plan to amend or terminate the plan are simply not governed by ERISA's fiduciary duties. Therefore, when deciding to amend and terminate the Ambassador pension plan defendant owed no fiduciary duties to plan participants and beneficiaries, and no duties were breached.

To determine whether the decisions of a plan fiduciary to amend or terminate a pension plan are ruled by ERISA's fiduciary duties, I must initially turn to the statute itself.

As I stated earlier, ERISA Section 404, 29 U.S.C. Section 1104, establishes that plan fiduciaries discharge their duties with respect to the plans they serve solely in the interest of plan participants and beneficiaries. In addition, ERISA Section 403(c), 29 U.S.C. Section 1103(c), provides that the assets of a plan must never inure to the benefit of an employer. Finally, ERISA Section 406(b), 29 U.S.C. Section 1106(b), expressly prohibits fiduciaries from dealing with the assets of the plans they serve in their own interest.

Each of these provisions, however, is subject to certain express exceptions. As stated at ERISA Sections 403(c)(1), 403(d)(1), and 404(a)(1), 29 U.S.C. Sections 1103(c)(1), 1103(d)(1), and 1104(a)(1), the Section 404 fiduciary duties and the Section 403 prohibition on plan assets inuring to an employer do not operate when a plan not covered by ERISA's pension benefit insurance program is terminated, *see* 29 U.S.C. Section 1321; when the Pension Benefit Guaranty Corporation itself terminates a pension plan in accordance with ERISA Section 4042, *see* 29 U.S.C. Section 1342 (1982); or when a terminated pension plan has its assets distributed in accordance with the distribution scheme set forth in ERISA Section 4044, 29 U.S.C. Section 1344 (1982). The Section 406 prohibition on a fiduciary's self-dealing is similarly exempted when the fiduciary distributes the assets of a terminated plan in accordance with the Section 4044 distribution scheme. 29 U.S.C. Section 1108(b)(9).

In the instant case, defendant has taken three disputed actions with respect to the Ambassador plan: he has amended the plan to freeze the accrual of plan benefits on December 31, 1983 (first plan amendment), he has amended the plan to provide for the return of excess funds to Ambassador upon plan termination (second plan amendment); and he has attempted to terminate the plan in accordance with ERISA Section 4041, 29 U.S.C. Section 1341 (1982), which governs the termination of an employer's plan by the plan's fiduciaries. None of these actions are expressly exempted from the strictures of ERISA Sections 403, 404 and 406. Still, I find that under a proper interpretation of ERISA the fiduciary duties which defendant owes to plan participants and beneficiaries do not reach defendant's decisions to amend and terminate the plan.

The purpose for which Congress enacted ERISA was to regulate the establishment and maintenance of private employee benefit plans. 29 U.S.C. Section 1001 (1982). It was not Congress' purpose to compel employers to adopt such plans or to continue them longer than an employer might otherwise decide, so long as pension plans, while in existence, were administered according to ERISA's fiduciary strictures, and the rights of plan participants to their benefits were assured both before and after plan termination. *See, e.g.,* 29 U.S.C. Sections 1001 (purpose of ERISA), 1131–1145 (civil, criminal, and administrative enforcement), 1461 (plan termination insurance). The House Committee on Education and Labor recognized as much when it passed its own version of the statute: "The primary purpose of the bill is the protection of individual pension rights, but the Committee has been constrained to recognize the volun-

tary nature of private retirement plans." H.R. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4639. Therefore, in establishing the strict duties under which plan fiduciaries must operate in order to protect the interests of plan participants and beneficiaries, Congress did not mean to constrain the power of an employer, acting as plan fiduciary, to terminate a plan. An employer may terminate a plan without violating the fiduciary duties it must obey when administering the plan. Of course, even when extinguishing a plan an employer may not extinguish the rights of plan participants to their benefits. As otherwise defined by ERISA, these rights are born during the life of a plan, and may if necessary survive its passing.

As noted above, ERISA expressly states as much in respect to the termination of uninsured pension plans, terminations by the Pension Benefit Guaranty Corporation, and the distribution of plan assets once a plan termination has occurred. 29 U.S.C. Section 1103(c)(1), 1103(d)(1), 1104(a)(1), 1108(b)(9). I find that the decision by a plan fiduciary to terminate a Plan in accordance with ERISA Section 4041, 29 U.S.C. Section 1341, is similarly exempt from ERISA's dictates that a fiduciary act in the interests of plan participants and beneficiaries only. *See* 29 U.S.C. Sections 1103(c), 1104 and 1106.

The notion that an employer may act in its own interests in deciding to terminate a pension plan, and not solely in the interests of plan participants, is consistent with ERISA's general scheme for plan terminations as well as with relevant ERISA case law.

Before an employer may terminate a Plan, it must file for and receive the certification of the Pension Benefit Guaranty Corporation that the Plan has sufficient funds to pay its obligations to plan participants. 29 U.S.C. Sections 1341(a), (b). If the corporation is unable to certify the sufficiency of the Plan, it must move to take control of the Plan under ERISA Section 4042, 29 U.S.C. Section 1342. Therefore, the interests of plan participants are not simply ignored once a fiduciary takes action to terminate a plan; instead, the protection of those interests shifts from the fiduciary to the Federal Government. In addition, distributions of the plan assets after termination are controlled by ERISA Section 4044, 29 U.S.C. Section 1344 (1982), which effectively orders the priorities of all parties with rights in the plan. This scheme for ERISA plan terminations appears to anticipate that plan fiduciaries may decide, in the interests of an employer rather than solely in the interests the plan participants, to terminate a plan, and ensures that the interests of plan participants remain protected despite the decision to terminate.

My finding that a fiduciary's termination decision is not governed by ERISA's fiduciary duties is supported by the relevant case law. In *District 65 v. Harper and Row, Publishers, Inc.,* 576 F.Supp. 1468 (S.D.N.Y.1983), the court held that decisions to terminate are not ruled by ERISA's fiduciary standards, due to the voluntary nature of pension plans and the fact that ERISA's stated exceptions to its fiduciary rules deal with plan terminations. Id. at 1477–78. *Cf. Viggiano v. Shenango China Division,* 750 F.2d 276, 279 (3d Cir.1984) (ERISA mandates neither the creation nor continuance of employee hospitalization plans, but only concerns itself with the elements of such a plan and its administration while the plan exists). In *Dhayer v. Weirton Steel Division,* cited *supra,* the Court held that an employer negotiating with a prospective buyer of its business could bargain for future changes in pension benefits without violating its duties as plan fiduciary, because ERISA's fiduciary duties apply only to "administrating a plan and conducting transactions affecting the moneys and property of the Plan's fund." 571 F.Supp. at 328. In other cases, parties have litigated an employer's right to recover excess pension plan funds without ever questioning the employer's right to terminate the plan. *See, e.g., Van Orman v. American Insurance Co.,* 680 F.2d 301 (3d Cir.1982); *In re C.D. Moyer Co. Trust Fund,* 441 F.Supp. 1128 (E.D.Pa.1977), aff'd, 582 F.2d

1275 (3d Cir.1978); *Pollock v. Castrovinci* 476 F.Supp. 606 (S.D.N.Y.1979), aff'd mem., 622 F.2d 575 (2d Cir.1980).

Not only was defendant free to operate outside the fiduciary standards of ERISA in terminating the Plan, defendant was also free of those standards when deciding to amend the plan as he did. Defendant's amendments did not purport to affect the rights of any plan participant, but only to affect Ambassador's obligation to continue the plan. By the reasoning followed above, defendant was exempt from his ERISA-imposed fiduciary duties when he amended Ambassador's pension plan, as well as when he acted to terminate it. *See Washington-Baltimore Newspaper Guild v. Washington Star Co.*, 555 F.Supp. 257 (D.D.C.1983) (employer not held to fiduciary standards when amending plan to provide for employer's own recovery of excess plan funds), aff'd mem., 729 F.2d 863 (D.C. Cir.1984). *See also* the *Van Orman* case, the *Moyer* case, and the *Pollock* case, cited *supra* (upholding validity of amendments to provide for employer recovery of excess plan funds).

I find that defendant was not subject to his fiduciary duties under ERISA when he amended the plan nor when he began termination of the plan, and that therefore defendant has not violated ERISA's stringent standards of fiduciary behavior.

■ As his third argument in support of his motion for summary judgment, plaintiff argues that defendant's second plan amendment, providing for the recovery of excess plan assets by Ambassador rather than by plan participants, is invalid, because it was executed after the pension plan had terminated. As a result, defendant's attempts to secure for Ambassador the excess plan funds, by enacting the second plan amendment and beginning termination of the plan under ERISA section 4041, 29 U.S.C. Section 1341, violated the express ban against fiduciary self-dealing proscribed by 29 U.S.C. Section 1106(b), as well as ERISA's general fiduciary standard, 29 U.S.C. Section 1104, and should be enjoined.

It is clear under ERISA that if Ambassador's pension plan had not yet been terminated by the time defendant began his efforts to recover excess plan funds for Ambassador, then the validity of defendant's efforts must be upheld and defendant's recovery of excess plan funds should not be impeded. In order to permit the distribution of any residual assets of a plan to the employer upon plan termination, ERISA Section 4044(d)(1)(C), 29 U.S.C. Section 1344(d)(1)(C), requires that the plan document provide for such distribution. The courts have uniformly held that an employer is entitled to recover residual plan assets upon plan termination if, on the date of termination, plan language properly so provides. *See, e.g., Bryant v. International Fruit Products Co.*, 604 F.Supp. 890 (S.D. Ohio 1985), rev'd on other grounds, 793 F.2d 118 (6th Cir.1986). *See also* the *Washington-Baltimore Newspaper Guild* case, cited *supra*, as well as the *Moyer* and *Pollock* cases, cited *supra*. In addition, it has been held that plan termination can have no effect on the substantive rights embodied by the pension plan. See *Audio Fidelity Corp. v. Pension Benefit Guaranty Corporation*, 624 F.2d 513, 517 (4th Cir.1980).

On December 9, 1984, as pointed out previously, defendant amended the Ambassador pension plan, providing in part that: "Any residual assets of a Plan may be distributed to the Employer if all liabilities of the Plan to the Participants and their Beneficiaries have been satisfied and such distribution does not contravene any provision of law."

This language is consistent with other plan provisions that have been construed by the courts to permit the reversion of surplus assets to employers. Such cases typically have involved unsuccessful claims that an employer violated the fiduciary provisions of ERISA by amending a pension plan immediately prior to termination to include a provision permitting a reversion. In *Bryant v. International Fruit Products Co.*, cited *supra* and reversed on other grounds, the court approved an employer's

amendment to its pension plan despite the fact that the amendment, creating a reversion of excess plan assets to the employer, was adopted the same day the plan was terminated. The amended provision stated that "[a]fter fulfillment of all obligations ... any portion of the Trust Fund remaining as a result of actuarial error shall be returned to the Employer." Despite the plaintiff's objections as to the timing of the amendment, the court held that the employer was entitled to the surplus. Similarly, in *In Re C.D. Moyer Company Trust Fund,* cited *supra,* the employer amended its pension plan to provide that "any assets which remain in the Plan because of erroneous actuarial computations after the Plan has satisfied all of its liabilities shall be returned to the Employer." The court there stated that "the challenged amendment includes the language necessary to reserve the employer's right to the remaining trust assets as required under Section 4044(d)(1)(C) of ERISA and as permitted under the Internal Revenue Code, 26 U.S.C. Section 401(a)(2)." 441 F.Supp. at 1132. *See* the *Pollock* case, cited *supra.*

In light of Section 4044(d)(1)(c) and its interpretation in the cases cited above, it is clear to me that so long as the pension plan had not yet been terminated defendant acquired the power to retain excess plan funds for Ambassador as soon as the December 9th amendment became effective. Only if the pension plan had indeed been terminated before that date would the Court now have reason to enjoin defendant's further actions to recover those excess funds.

Plaintiff contends that the Ambassador pension plan was terminated on April 4, 1984, when defendant amended the plan for the first time. According to plaintiff, the April 4 amendment itself terminated the plan because it froze the amount of accrued benefits of all plan participants as of December 31, 1983. Plaintiff cites 26 U.S.C. Section 411(d)(3) (Supp. III 1985), a section of ERISA amending the Internal Revenue Code, and Treasury Regulation Section 1.411(d)(2), 26 CFR Section 1.411(d)–2 (1986), as the legal provisions which determine when precisely the Ambassador plan was terminated.

Section 411(d)(3) states that upon the "termination or partial termination" of a plan, the rights of all affected participants must be nonforfeitable, or the plan is ineligible for favorable tax treatment under 26 U.S.C. Section 401. Treasury Regulation Section 1.411(d)(2) states in part: "If a defined benefit plan ceases or decreases future benefit accruals under the plan, a partial termination shall be deemed to occur if, as a result of such cessation or decrease, a potential reversion to the employer, or employers, maintaining the plan (determined as of the date such cessation or decrease is adopted) is created or increased." Plaintiff cites *United Steelworkers of America v. Harris & Sons Steel Co.,* 706 F.2d 1289 (3d Cir.1983), in support of his contention that the aforementioned tax rules set the plan's termination date, and set it as April 4, 1984, the day "future benefit accruals" were frozen.

I reject plaintiff's contention that the tax rules previously cited determine the date on which the Ambassador plan ended, and I do so by relying on *Harris.*

In *Harris,* defendant argued that 26 U.S.C. Section 411 and its accompanying regulations determined the date on which Harris' pension plan terminated. Id. at 1290–91. The Third Circuit rejected that position, holding instead that the tax rules only served the "limited purpose" of identifying pension plans eligible for favorable tax treatment under 26 U.S.C. Section 401 (1982). Id. at 1298–99. The Court expressly held that tax precepts governing the termination or partial termination of a plan "are intelligible in the context of the limited purposes they are meant to serve," but not in other contexts. Id. 1299. The proper method for determining the termination date of a pension plan is to look to the plan document itself.

The Ambassador plan document does not define the termination date of the Ambassador plan other than to state at Section 11.04 that "The terms 'termination' and

'partial termination', as used in this plan, shall have the meaning imparted thereto under ERISA."

Following Section 11.04 of the plan, as well as the teachings of *Harris* that the tax provisions related to pension plans serve only tax code purposes, I look next to Title IV of ERISA, which establishes plan termination procedures and rules for the distribution of assets after plan termination.

Section 4041 of ERISA's Title IV, 29 U.S.C. Section 1341, defines the procedure by which an employer may terminate its own plan. Section 4041 provides for termination by a plan administrator by filing a notice with the Pension Benefit Guaranty Corporation that the plan is to be terminated on a proposed date, and further provides that the plan administrator may proceed with termination upon receiving a notice of sufficiency from the Pension Benefit Guaranty Corporation. The only termination of a plan by any other method which is permitted under Section 4041 is the adoption of an amendment which changes the plan to one which is not insured by the Pension Benefit Guaranty Corporation under ERISA Section 4021, 29 U.S.C. Section 1321 (1982). See 29 U.S.C. Section 1341(f).

ERISA Section 4041 serves as a sufficient definition of a plan termination to apply in this case. The Ambassador plan will terminate only upon the execution of the Section 4041 procedure, under which defendant notifies the PBGC of an intent to terminate and the PBCG acts upon the notification. Therefore, the Ambassador plan had clearly not been terminated before the December 9th amendment took effect since defendant had not even filed with the PBGC until after he amended the plan for the second time. Defendant's second amendment was made before the Ambassador plan was terminated; it, therefore, controls the particulars of termination, and defendant may proceed with his termination of the plan in accordance with ERISA and the Ambassador plan document, as amended.

I hereby conclude that defendant Bernstein, as agent of Ambassador's court-appointed receiver, has been granted power by the Vermont Superior Court sufficiently broad to enable him to amend and terminate the Ambassador pension plan without the approval of Ambassador's board of directors. Furthermore, while defendant Bernstein, as fiduciary of the Ambassador pension plan, must be held to all stringent fiduciary standards imposed by ERISA in order to guarantee the rights of plan participants and the sound administration of the plan, I conclude that ERISA did not impose fiduciary standards on defendant's decisions to amend and terminate the Ambassador pension plan. Finally, I conclude that the Ambassador pension plan had not been terminated before defendant made his second amendment to the plan, and that defendant's second amendment to the plan and his subsequent efforts to terminate the plan under 29 U.S.C. Section 1341 cannot be challenged as having been made after the plan terminated.

For all the foregoing reasons, plaintiff Chait's motion for summary judgment is denied in its entirety. Defendant Bernstein's motion, which I decide as a motion for summary judgment, is granted in its entirety.