**In re C. D. MOYER COMPANY TRUST FUND.**

**Civ. A. No. 77–2268.**

United States District Court,
E. D. Pennsylvania.

Oct. 28, 1977.

James N. Dulcan, Stephen D. Schrieber, Washington, D. C., Marshall H. Harris, Regional Sol., Dept. of Labor, Philadelphia, Pa., for applicants.

Bernard Kolodner, Edward Hardiman, Lansdale, Pa., Dennis Helf, Perkasie, Pa., for respondent.

## MEMORANDUM OF DECISION

McGLYNN, District Judge.

This is an application by the Pension Benefit Guaranty Corp. (PBGC) for the appointment of a trustee and for an order of distribution of the assets of the C. D. Moyer Pension Trust (the Plan) under sections 4041(g) and 4042(b) of the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. §§ 1341(g) and 1342(b) (Supp. V 1975)). Jurisdiction is predicated upon section 4003(e)(3) of ERISA (29 U.S.C. § 1303(e)(3)(Supp. V 1975)).

### I

PBGC is a United States Government corporation established under section 4002 of ERISA (29 U.S.C. § 1302) to administer the mandatory pension plan termination insurance program in Title IV of ERISA. § 4002(a) (29 U.S.C. § 1302(a)). C. D. Moyer Company Trust is a pension plan sponsored by the C. D. Moyer Co., which is the employer and plan administrator. The Plan is funded solely by employer contributions. On March 15, 1976, the employer amended the Plan to provide for payment to it of any assets which remain in the Plan because of erroneous actuarial computations after the Plan has satisfied all of its liabilities. The employer proposed termination of the Plan on April 2, 1976. On December 4, 1976, a Certification of Sufficiency was filed which stated that the Plan assets were sufficient to satisfy the benefits guaranteed by PBGC under Title IV of ERISA. On December 28, 1976, PBGC issued a notice of sufficiency, pursuant to § 4041(b) of ERISA which authorized the employer to terminate the Plan and distribute the assets. Relying upon the notice of sufficiency, the plan

administrator purchased annuities for all participants which fulfilled the obligation of the Plan. The excess of the plan assets over the amount required for the purchase of annuities totaled $90,000, and by letter dated May 16, 1977, the employer so notified PBGC. On June 29, 1977, PBGC filed the application here at issue seeking the appointment of a trustee for the purpose of acquiring and distributing to the employees of C. D. Moyer Co. the $90,000 excess. For the following reasons, I hold that this application must be denied.

## II

[1] Although PBGC is authorized by section 4041(g) (29 U.S.C. § 1341(g)) to seek the appointment of a trustee, it may do so only under the limited circumstances prescribed by section 4042 (29 U.S.C. § 1342).

Section 4042 authorizes PBGC to apply for appointment of a trustee, "[W]henever the corporation makes a determination" [1] that:

"(1) the plan has not met the minimum funding standard required under section 412 of Title 26 (Internal Revenue Code) . . .

(2) the plan is unable to pay benefits when due,

(3) the reportable event described in section 1343(b)(7) of this title has occurred, or

(4) the possible long-run loss of the corporation with respect to the plan may reasonably be expected to increase unreasonably if the plan is not terminated.[2]

Not one of these requirements is present here.

As to the funding standard, the Plan was terminated prior to the first day of the plan year beginning in 1976 and, therefore, was never governed by section 412. See ERISA, § 1017(b).[3] Moreover, the existence of an actuarial overfunding demonstrates that the Plan would have satisfied the requirements of that section in any event.

The second criterion for the appointment of a trustee is not applicable since annuities have been purchased which will provide payment of the benefits required under the Plan when due.

Next, for a reportable event under section 1343(b)(7) to occur, a plan must have unfunded nonforfeitable benefits immediately after a distribution of $10,000 or more, made by reason other than death, to an individual participant. This reportable event is precluded since all benefits in the Plan are funded.

Finally, PBGC will not have to fund any benefits under the Plan since the Plan is being terminated and every benefit is being paid. There will be no loss to the PBGC.

Having exhausted the requirements of section 4042(a) and having found none applicable to the Plan, I hold that the PBGC has no authority to bring this action for the appointment of a Trustee under section 4042(b) or section 4041(g).

## III

■ However, PBGC is also authorized by section 4003(e)(1) (29 U.S.C. § 1303(e)(1)) to seek redress for violations of ERISA relating to the distribution of the residual assets. § 4044(d)(1) (29 U.S.C. § 1344(d)(1)). Conceivably, this could include the appointment of a trustee for the purpose of properly allocating the corpus of the fund.

PBGC argues that the March 15th, 1976 amendment to the Plan which provided for the return of actuarial overfunding to the employer is ineffective under Pennsylvania law and therefore the trustee must deliver the excess assets to the employees. On the other hand, the employer contends that the amendment was proper and that the residual assets should be returned to the company in accordance with section 4044(d)(1).

■ The initial question is whether state law or federal law controls the validity of the amendment. § 514 of ERISA (29 U.S.C. § 1144) states that the provisions of

---

1.  Subsection (b).

2.  Subsection (a).

3.  26 U.S.C.A. § 410 note (Supp. 1977).

Title I and Title IV of the act "shall supercede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan . . .." This statute was specifically intended to preempt any state regulation of employee benefit plans. *Azzaro v. Harnett,* 414 F.Supp. 473 (S.D.N.Y.1976); *Hewlett-Packard Co. v. Barnes,* 425 F.Supp. 1294 (N.D.Cal.1977); *Wayne Chemical, Inc. v. Columbus Agency Service Corp.,* 426 F.Supp. 316 (N.D.Ind.1977). *See also Wadsworth v. Whaland,* 562 F.2d 70 (1st Cir. 1977).[4]

Since the Plan in question is undisputably a covered federal plan, state law is not controlling in this case.

■ There is no particular provision of any federal statute which specifically deals with the issue presented here. However, under ERISA's legislative scheme, this court is empowered to formulate rules of law to govern various aspects of the employee benefit field:

> "It is also intended that a body of law will be developed by the courts to deal with the issues involving rights and obligations under private welfare and pension plans." 120 Cong.Rec. 515751 (daily ed. August 22, 1974).

*Wayne Chemical, Inc. v. Columbus Agency Service Corp., supra.*

■ The source of this law must be the policies underlying ERISA. The general objective of this legislation was to increase the number of individuals in employer-financed benefit plans and to "assure that those who do participate actually receive benefits and do not lose benefits as a result of unduly restrictive forfeiture provisions or failure of the pension plan to retain sufficient funds to meet its obligations." [1974] U.S.Code Cong. & Admin.News pp. 4676–77. One of the practices the Act was designed to prevent was termination of

plans before the funds necessary to pay anticipated benefits had been accumulated. § 401 of ERISA (29 U.S.C. § 1101(a)).

Generally, the assets of the employee benefit plans are to be held for the exclusive benefit of the plan participants. § 403(c)(1) (29 U.S.C. § 1103(c)(1)). However, ERISA does provide that employer contributions may be returned in certain situations. Upon termination, residual assets may be distributed to an employer under section 4044(d)(1) if three conditions are met: all liabilities of the plan have been satisfied; the distribution is not in contravention of any law; and, the plan provides for such a distribution in these circumstances. The central issue in this case, then, is whether the plan was effectively amended to provide for such a distribution.

### IV

■ The original plan allowed the employer to alter, amend or revoke the pension agreement. This power was limited, however, by the following provision:

> "It shall, however, at all times be impossible, if any alteration, amendment or revocation be made pursuant to this provision, for any of the trust corpus or income to be diverted to or revert to either of the employers or to be used for any purpose other than the exclusive benefit of the participants or their beneficiaries." (Plan ¶ 5.1).

It is the position of PBGC that this provision of the Plan precludes the adoption of the challenged amendment which reads as follows:

> "Any assets which remain in the Plan because of erroneous actuarial computations after the Plan has satisfied all of its liabilities shall be returned to the Employer."

I can not accept PBGC's interpretation.

---

4. An earlier version of this section confined preemption to the specific areas covered by the bill but was rejected because:

"[o]f the possibility of endless litigation over the validity of state action that might impinge on federal regulation, as well as opening the door to multiple and potentially con-

flicting state laws hastily contrived to deal with some particular aspect of private welfare or pension benefit plans not clearly connected to the federal regulatory scheme." 120 Cong.Rec. 515751 (daily ed. August 22, 1974).

It seems clear that at the time the Plan came into existence, the parties considered the phrase "trust corpus or income" to include only so much of the funds as were necessary to insure full payment of the plan's obligations to the participants. This is readily apparent from section 3.6 of the Plan which limits the financial obligations of the employer to the payment of the expenses of the trustee and "such sums as may be necessary to pay for and to finance the benefits under the Plan." This interpretation is reinforced by the elaborate scheme of priorities in the event of revocation or termination provided by the Plan in section 5.2 which makes no provision for the allocation of any remaining funds after all the obligations to the participants have been fulfilled.

A reading of the Plan as a whole convinces me that the parties did not contemplate that at the time of termination there would be an excess due to overfunding. Therefore, I am persuaded that the phrase "trust corpus or income" as used in section 5.1 means only such funds that are necessary to insure the Plan's specified obligations to the participants. Accordingly, it is my conclusion that the employer is not precluded by the terms of section 5.1 of the Plan from adopting the challenged amendment.

### V

It is also my conclusion that the challenged amendment does not contravene the provisions of ERISA.

ERISA details a procedure for amending a plan to change the accrued benefits thereunder. §§ 204(g), 302(c)(8) (29 U.S.C. §§ 1054(g), 1082(c)(8)). However, it does not provide any guidelines for a plan amendment similar to the one now under examination. The Internal Revenue Code at 26 U.S.C. §§ 401(b) and 411(a)(10) does allow for pension plans qualified under section 401(a) to be amended. Section 411(a)(10) deals particularly with changes in the vesting schedule, while section 401(b) is a general provision permitting retroactive changes in qualified plans.

Revenue ruling 77–200 (May 12, 1977) allows amendments to qualified benefit plans and trusts which permit employer contributions to revert to the employer in certain cases of mistaken payments. The ruling first discusses the general prohibitions against diversion of assets in the Internal Revenue Code and ERISA. It then cites an exception to this general rule contained in section 403(c)(2) of ERISA which allows the return of employer contributions if the contribution was made by reason of a mistake of fact. § 403(c)(2)(A). The ruling then states:

". . . Language providing for a return of contributions in the circumstances specified in section 403(c)(2)(A) . . . of ERISA may now be included in a plan intended to qualify under the Internal Revenue Code. Provisions incorporating such language may be effective as of a date no earlier than the date section 403(c)(2) of ERISA is effective. Plans which are amended only to include language essentially equivalent to the language of section 403(c)(2) of ERISA will not fail to satisfy section 401(a)(2) of the Code solely as the result of such an amendment."

A similar approach must be taken in the case at bar. The provisions of sections 403(d)(1) and 4044(d)(1) of ERISA represent an exception to the general rule prohibiting diversion of assets. The challenged amendment includes the language necessary to reserve the employer's right to the remaining trust assets as required under section 4044(d)(1)(C) of ERISA and as permitted under the Internal Revenue Code, 26 U.S.C. § 401(a)(2).

### VI

Having determined that the amendment is valid, it follows that a refund to the employer meets the requirements of section 4044(d)(1) of ERISA.

This result is consistent with the policies underlying the enactment of ERISA. Employers will continue to fund their plans under ERISA guidelines, but will not be penalized for overfunding in "an abundance

of caution" or as a result of a miscalculation on the part of an actuary. Thus, employees will continue to be protected to the extent of their specific benefits, but will not receive any windfalls due to the employer's mistake in predicting the amount necessary to keep the Plan on a sound financial basis.

### VII

For the foregoing reasons, the Application of the Pension Benefit Guaranty Corporation will be denied, and the existing Trustee is authorized to distribute the remaining assets to the employer in accordance with section 4044(d)(1) of ERISA.