David W. WILSON, et al., Plaintiff,

v.

BLUEFIELD SUPPLY COMPANY, et al., Defendants.

Civ. A. No. 1:86–0495.

United States District Court, S.D. West Virginia, Bluefield.

Dec. 17, 1986.

John L. Hash (Local counsel), Huntington, W.Va., and Carl Genberg, Columbus, Ohio, Thomas L. Clark, Beckley, W.Va., Freeman T. Eagleson, Columbus, Ohio, for plaintiffs.

Gilchrist B. Berg, Successor Trustee of Bluefied Supply Co. Pension Plan/Trust.

Anne Gordon Greever & J.G. Ritter, II, Hunton & Williams, Richmond, Va., for Bluefied Supply Co.

Lawrence E. Morhous and David M. Kersey, Hudgins, Coulling, Brewster, Morhous & Cameron, Bluefield, W.Va., for defendants.

Norris Kantor, Bluefield, W.Va., and Wayne L. Evans, for Flat Top Nat. Bank of Bluefield.

## MEMORANDUM ORDER

HALLANAN, District Judge.

### I. *Introduction*

This matter is before the Court via motions for summary judgment filed by: the Plaintiffs David W. Wilson, *et al.*, (hereinafter the Class); the Defendants Bluefield Supply Company, *et al.*, (hereinafter Bluefield); and Flat Top National Bank (hereinafter Flat Top). The parties have agreed in open court on the record that this case contains no genuine issues of material fact as contemplated in Rule 56, Fed.R.Civ.P. All parties have submitted their respective memoranda of law, etc., in support of their respective positions. Oral argument on the motions was heard on December 10, 1986. This matter is, therefore, in a procedural posture for disposition.

Jurisdiction is proper pursuant to 29 U.S.C. § 1104, 29 U.S.C. § 1132, 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c).

By an Order entered November 5, 1986, the Court upon motion of the Plaintiffs (now a Class) granted Plaintiffs' motion to certify the above-styled action as a class action pursuant to Rule 23(b)(2), Fed.R.Civ.P. In open court and on the record, all parties agreed that resolution of this matter via summary judgment did not present problems concerning notification of the Class involved herein.

### II. *Relevant Facts*

The following recitation of facts is necessary to give perspective to the decision which follows *infra:*

1. The Class in this action is comprised of all employees of Bluefield Supply Company or its affiliated companies who attained vested rights in a Pension Trust Agreement (hereinafter Plan) established for the employees of Bluefield Supply Company and associated companies. Also included in the class are surviving spouses and/or estates of the employees of Bluefield Supply Company or its affiliated companies who attained vested rights in the Plan.

2. Defendant Bluefield is a Virginia corporation that maintains its principal place of business in Bluefield, West Virginia. Complaint ¶ 7. Bluefield is the sponsor of the Plan. Complaint ¶ 15.

3. The individual Defendants, B.W. Harvey, James E. Gillenwater, Mirto A. Corte, C.I. Johnson, Jr., Robert M. Richardson and A.A. Modena are or were either directors or both officers or directors and officers of Bluefield. Complaint ¶¶ 8, 13. The individual Defendants, other than Modena, are members of the Bluefield Pension Committee.

4. The Flat Top National Bank is a national banking association that is headquartered in Bluefield, West Virginia. It is the trustee of the Plan.

5. The Plan was established in 1951 for the benefit of the eligible employees of Bluefield and its participating affiliates. The Plan was a "qualified Plan" and the Internal Revenue Service issued determination letters to that effect.

6. The Plan was a defined benefit pension plan. The Plan was designed and administered to provide fixed benefits to participants in accordance with the formula contained in the Plan. Bluefield and the other participating employers were obligated to make contributions to the Plan in an amount sufficient to pay the benefits promised to participants and beneficiaries. The employers, to some extent, assumed the risk of the Plan's investment and other actuarial experiences. If the Plan's investment yield was less than projected, participants' benefits would not have been affected, although additional employer contributions might have been required. If the Plan's actuarial experience was more favorable than its funding assumptions, reduced employer contributions might have been permitted in later years. In short, the benefits promised to the Plan's participants and beneficiaries were not affected by the Plan's investment yield or other actuarial performances.

7. From 1951 through August 31, 1985, the Plan was amended on several occasions. On August 30, 1985, the Plan was divided into separate but identical plans. One of those plans covered employees who are or were included under Bluefield's collective bargaining agreements. The other plan, which continued as the Plan, covered all other eligible employees.

8. On August 19, 1985, Bluefield's board of directors approved termination of the Plan. *The termination amendment added a specific provision to the Plan concerning recovery of any surplus funds. The new provision provided that residual assets would be distributed to or as directed by Bluefield.*

9. The Plan terminated on August 31, 1985. Each participant's accrued benefit became entirely nonforfeitable on that date.

10. The trustee of the Plan thereafter purchased a group annuity contract from Transamerica Occidental Life Insurance Company, guaranteeing the payment of all benefits due to the Plan's participants and beneficiaries.

11. There were Plan assets remaining after the purchase of the group annuity contract (the Surplus). The Surplus arose because the actuarial experience of the Plan was more favorable than the actuarial assumptions that were followed in funding the Plan.

12. No participant or beneficiary ever contributed to the Plan.

13. The Class seeks to enjoin Bluefield from recovering the residual assets and asks the Court to have said assets distributed to the Class.

14. By an Order entered October 23, 1986, the Court denied the motion made by the Class (then Plaintiffs) for a preliminary injunction preventing Bluefield from removing the surplus of over 14.5 million dollars from Flat Top.

15. On December 9, 1986 the Court granted the motion of the Class for a Temporary Restraining Order (TRO) preventing transfer of the surplus from Flat Top to Gilchrist B. Berg as successor trustee until pending matters could be resolved. Said

TRO expires on December 18, 1986 at 4:52 p.m.

16. In the previously mentioned motions for summary judgment Bluefield seeks access to the surplus of over 14.5 million dollars as provided by the Amended Plan. The Class in its motion for summary judgment also seeks access to the surplus. Flat Top seeks summary judgment which would absolve them of any accusation of breach of its fiduciary duty.

### III. *Decision and Legal Analysis*

For the reasons stated *infra* Defendants' motion for summary judgment is ORDERED GRANTED. Flat Top's motion for summary judgment is also ORDERED GRANTED. The motion of the Class of Plaintiffs is ORDERED DENIED WITH PREJUDICE.

■ At the outset it should be noted that resolution of cases such as the one at bar turn primarily on the construction given the language of each Plan and each provision of a Plan must be construed in light of all the language contained in the entire Plan as a whole. In *Bryant v. International Fruit Products Co., Inc.*, 793 F.2d 118 (6th Cir.1986), the Court succinctly explained the proper approach: "Each case of this kind is controlled by the language of the documents creating the particular plan involved." *Id.* at 123. See also the approach used in *Audo Fidelity v. Pension Ben. Guaranty Corp.*, 624 F.2d 513 (4th Cir.1980) and *In re C.D. Moyer Co. Trust Fund*, 441 F.Supp. 1128 (E.D.Pa.1977), *aff'd without opinion*, 582 F.2d 1273 (3rd Cir.1986).

The Employee Retirement Income Security Act of 1974 (ERISA) at Section 4044(d)(1) provides that residual assets of a Plan may be returned to the employer if the following three requirements are met: First, residual assets are recoverable only after all of the Plan's liabilities to participants and beneficiaries have been satisfied; Second, the recovery is permissible only if the distribution will not violate any provision of law; and Third, the Plan must permit the employer to recover the residual assets. ERISA Sections 4044(d)(1)(A) through (C), 29 U.S.C. §§ 1344(d)(1)(A) through (C). The facts of this case indicate beyond peradventure that Bluefield has met the first two requirements of ERISA. The only issue is whether the Plan in the case at bar allowed such a recovery by Bluefield. In other words, has Bluefield satisfied the third requirement of ERISA? To answer this question one must turn to the original Plan at issue herein.

The original Pension Trust Agreement (Plan) at issue herein provides the following in Article I at paragraphs (7) and (8):

(7) *For business necessity, of which its Board of Directors shall be the sole judge, the Company may terminate this agreement and discontinue altogether any such payments into the Fund,* in which event the Trustee shall hold all of the Fund as then constituted with the income arising therefrom for the benefit of all Participants for their service to the Company up to that time.

(8) *The Company with the consent and approval of the Committee may amend this agreement,* provided no amendment shall be made which operates to deprive any Participant of benefits already accrued to him as herein provided.

Pension Trust Agreement (Plan), Article I at paragraphs (7) and (8). (Emphasis Supplied).

■ From the language cited above, it is clear that the Plan could be terminated and amended by Bluefield so long as such action did not operate to deprive participants of their benefits. Thus, the question narrows to one of whether or not Bluefield's amendment of the Plan on August 19, 1985 operated to deny participants their benefits. The Pension Trust Agreement at Article VII paragraphs (1) and (2) provides the following:

(1) All monies paid to the Trustee hereunder and all securities or other property in which the same or any part thereof is invested, together with all income arising therefrom including any profit resulting from the sale of assets therein *shall be held by the Trustee in trust for the uses*

*and purposes herein provided* and may be referred to herein as the "Fund." There shall be deducted from the Fund all taxes, charges and expenses necessarily incurred in the management and administration of the same including the compensation to be paid to the Trustee as hereinafter provided and including any losses that may be sustained in the investment or conversion of assets in the Fund and the Fund shall be disbursed by the Trustee as herein provided.

(2) No part of the Fund or interest therein nor any item of property included therein shall be withdrawn, assigned or otherwise transferred in whole or in part, either by the voluntary act of the Company or operation of law, or otherwise, all right title and interest of the Company in the Fund and all monies and property therein having been absolutely transferred and assigned by this agreement to the Trustee, to be held, managed and administered solely pursuant to this agreement. None of the assets belonging to the Fund hereby created, or of the income therefrom, shall be diverted or used for any purpose other than the exclusive benefit of the Participants *as contemplated and provided by this agreement.*

Pension Trust Agreement (Plan), Article VII at paragraphs (1) and (2). (Emphasis Supplied.) The critical language above is that which the Court has underlined. Thus, the fund is to be used for the purposes provided in the Pension Trust Agreement and *as contemplated by the Pension Trust Agreement.* Hence, to determine the validity of Bluefield's amendment made on August 19, 1985 one must determine if the amendment deprives the class or participants of any benefit *contemplated by the Pension Trust Agreement (Plan.)*

■ The Court concludes that the Plan provided a formula at Article V, Paragraph (2) which provided for a maximum retirement benefit. Bluefield met its obligations in accordance with said formula by purchasing a group annuity contract from Transamerica Occidental Life Insurance Company which pays to the former employees the *maximum they were guaranteed by the Plan.* Any windfall or surplusage resulting from overpayment into the fund is rightly the property of Bluefield.

Therefore, the Court concludes that the amendment of the Plan to provide reversion of surplus to Bluefield was valid and proper. Unlike *Audio, supra,* where the pensioners prevailed, Bluefield amended the Plan prior to termination of the Plan. The case at bar is more like *Moyer, supra,* where the company prevailed. *Moyer* is cited with approval in *Audio, supra,* at 517 for the proposition that amendments made before termination of the Plan are valid. The case at bar is unlike *Bryant, supra,* where the pensioners prevailed in that a provision in the Plan involved in *Bryant,* specifically prohibited reversion to the Company. *Bryant, supra* at 122.

There is no particular federal statute which specifically guides a court in cases such as the one at bar. The courts must formulate their own rules. *Moyer, supra* at 1131. The *Moyer* court correctly stated the following:

The source of this law must be the policies underlying ERISA. The general objective of this legislation was to increase the number of individuals in employer-financed benefit plans and to "assure that those who do participate actually receive benefits and do not lose benefits as a result of unduly restrictive forfeiture provisions or failure of the pension plan to retain sufficient funds to meet its obligations." [1974] U.S.Code Cong. & Admin.News pp. 4676–77. One of the practices the Act was designed to prevent was termination of plans before the funds necessary to pay anticipated benefits had been accumulated. § 401 of ERISA (29 U.S.C. § 1101(a)).

*In Re C.D. Moyer Co. Trust Fund,* 441 F.Supp. 1128, 1131 (E.D.Penn.1977). The decision herein is consistent with a public policy which would encourage employers to overfund pension plans and guarantee employee pensions in the hope of recovering any surplusage that may remain after the pensions of employees have been paid.

Such a policy ensures employees their pensions and encourages employers to pay generously into a Plan.

The TRO now in effect in this action is ORDERED VACATED and all other pending motions are now MOOT. Summary judgment was awarded Flat Top because all parties agreed in open Court and on the record that Flat Top had not breached its fiduciary duty as of the time of oral argument on motions for summary judgment which was held on December 10, 1986.

### JUDGMENT ORDER

For the reasons stated in a MEMORANDUM ORDER entered of equal date, it is ADJUDGED and ORDERED that the motion for summary judgment of Defendants' Bluefield Supply Company, et al., and Flat Top National Bank is GRANTED and the motion for summary judgment of the Plaintiffs, which is a Class, is ORDERED DENIED WITH PREJUDICE.

The Clerk is directed to mail a certified copy of this Judgment Order to all counsel of record and remove this case from the active docket.

IT IS SO ORDERED this 17th day of December, 1986.