**INTERNATIONAL UNION OF ELECTRONIC, ELECTRIC, SALARIED, MACHINE AND FURNITURE WORKERS, AFL–CIO, James R. Baldwin, Harry J. Layne, Rodney J. Pettinato, Pauline Rothermel, and Marlyn Thompson, individually and on behalf of a class, Plaintiffs,**

v.

**MURATA ERIE NORTH AMERICA, INC., Defendant.**

**Civ. A. No. 89–255 Erie.**

United States District Court, W.D. Pennsylvania.

March 7, 1991.

Charles R. Both, Yablonski Both & Edelman, Washington, D.C., for plaintiffs.

Michael A. Caldwell, R. Scott Tobin, Michael S. Rosenthal, Atlanta, Ga., Peter J. Belott, Erie, Pa., for defendant.

## MEMORANDUM OPINION

MENCER, District Judge.

By an order of February 22, 1991, this court certified this case as a class action, and it is currently before us on crossmotions for summary judgment. In count I, plaintiffs allege breach of contract as a violation of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, while in count II they proceed under the Employee Retirement Income Security Act (ERISA),

29 U.S.C. § 1132. On this motion, however, both parties have focused the attention of their briefs exclusively on count II, and this court limits its analysis accordingly. Because plaintiffs succeed under the ERISA claim and relief under the LMRA would be no different, we need not address the merits of the LMRA/contract claim. See *Delgrosso v. Spang & Co.*, 769 F.2d 928, 938 n. 13 (3d Cir.1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2246, 90 L.Ed.2d 692 (1986).

On July 30, 1990 this court denied cross-motions for summary judgment, a motion to dismiss and a motion to stay proceedings. The memorandum opinion of that date set out the relevant facts, and we will not repeat them in detail here. Briefly, however, the issue in this case is whether surplus assets of the Erie Technological Products, Inc. Hourly Benefit Plan (the "Erie Plan") and the Fryling Manufacturing, Inc. Hourly Employee Benefit Plan (the "Fryling Plan") may revert to the employer after all the benefits to the employees have been paid.[1] Plaintiffs are the class of beneficiaries under the plans who would receive the surplus. Defendant Murata currently controls the surplus assets and seeks to keep them.

Created in 1949 and 1973 respectively, the Erie and Fryling Plans were restated in 1977 and 1978, with union approval, to comply with the provisions of the then recently enacted ERISA statute. In 1981 Murata acquired the assets and liabilities of Erie and Fryling including the plans at issue. On December 12, 1986, Murata closed the Erie operations, and later notified Plaintiffs of its intent to terminate the Restated Plans effective September 30, 1987. Plaintiffs were notified on October 21, 1989, that

fixed annuities had been purchased for them by the Plan administrator. On September 5, 1989, the Plan administrator transferred to Murata nearly $7 million in surplus Plan assets. (Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment at 15). Plaintiffs argue that by distributing the money to itself, Murata violated its fiduciary duties under 29 U.S.C. § 1104, including the duty to act "in accordance with the documents and instruments governing the plan," and that the distribution violated the specific terms of ERISA § 4044(d)(1).[2]

## COUNT II

Section 4044(d)(1) of ERISA permits distribution of excess assets to the Employer if the following conditions are satisfied:

(A) all the liabilities of the plan to participants and their beneficiaries have been satisfied,

(B) the distribution does not contravene any provision of law, and

(C) the plan provides for such a distribution in these circumstances.

29 U.S.C. § 1344(d)(1).

Sections (A) and (B) are satisfied, (C) is the more troublesome requirement. It is undisputed that the restated plans did not "provide[ ] for such a distribution" before 1984.[3] In 1984 defendant attempted to amend the plan to provide for reversion to the employer in order to comply with subsection (C). However, in our July 30, 1990 opinion we held that the amendment was ineffective. Our conclusion was based, in part, on the plan itself which provided that "n[o] ... amendment shall vest in the Company any right, title or interest in or to the funds held by the Trustee." (Plan § 14.02). It was also based on the collective bargain-

---

1. The two plans are nearly identical and are treated jointly as the Plan or Plans.

2. Murata admits that it is a "fiduciary," a "plan sponsor," and the "administrator" of the Plan. See Complaint at ¶ 11 and Answer at ¶ 4.

3. Defendant does argue that before the restatement the plans provided for reversion. It directs the court to "Exhibits A" which constitute almost 500 pages, without any direction to any particular location within those pages. Never-

theless, defendant states only that "[e]very pension plan prior to the 1977–78 Restated Plans, all of which predate ERISA, specifically provided for the reversion of any residual assets remaining after the satisfaction of all liabilities...." (Defendant's Brief at 7). With regard to the restated plans, defendant can argue only that the "Post–ERISA Restated Plans clearly do not prohibit reversion ..," *Id.*, or that "the language regarding reversionary rights in the Plans is obviously not clear." *Id.* at 8.

ing agreement (CBA) between the Union and Murata which stated that "during the period of three (3) years from the effective date of August 13, 1984, neither the Company nor the Union shall demand any change in the Pension and Welfare Plan." It may be that, standing alone, a breach of the CBA external to the plan states only a contract claim and cannot support a breach of fiduciary duty claim under ERISA. In the instant case, however, the CBA was incorporated into the plan itself by § 14.01 which allowed the company to amend the plan "except as otherwise provided by any collective bargaining agreement in effect."

The cases have not all been perfectly consistent regarding plan language prohibiting reversionary amendments. See *Delgrosso v. Spang & Co.*, 769 F.2d 928 (3d Cir.1985) (in defined contribution plan where employer was without authority to amend the plan, purported amendment authorizing reversion was ineffective and employees were entitled to the surplus), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2246, 90 L.Ed.2d 692 (1986); *Chait v. Bernstein*, 835 F.2d 1017 (3d Cir.1987) (in defined benefit plan, ERISA "exclusive benefit" 'boilerplate' did not prevent an otherwise valid amendment from establishing reversion to the employer); *In re CD Moyer Co. Trust Fund*, 441 F.Supp. 1128 (E.D.Pa. 1977) (prohibition of reversion of trust assets did not bar reversion of surplus funds because "trust" included only the funds necessary for benefits), *aff'd mem.*, 582 F.2d 1273 (3d Cir.1978); *Wilson v. Bluefield Supply Co.*, 819 F.2d 457 (4th Cir. 1987). Thus, the most difficult question in this case was whether § 14.02 in conjunction with the collective bargaining agreement successfully thwarted Murata's attempt to make such a reversionary amendment here. Once we decided that in the affirmative, however, there was little left of the case.

By our earlier opinion and order we denied summary judgment based upon what we perceived as a possible material question of fact as to the nature of the fund. However, ERISA makes clear that in order for Murata to have obtained the surplus assets the plan must have affirmatively provided for reversion. 29 U.S.C. § 1344(d)(1). In order to overcome the general posture of ERISA that "the assets of a plan shall never inure to the benefit of any employer," 29 U.S.C. § 1103(c)(1), the clear language of § 4044(d) (29 U.S.C. § 1344(d)) requires employers to insert an affirmative provision if they seek reversion in favor of themselves. Whatever the source of the surplus, since the amendment is ineffective "no rational interpretation of the [Restated Plan] could result in the conclusion that it specifically provides that a surplus is to be distributed to the employer," *Albedyll v. Wisconsin Porcelain Co. Revised Retirement Plan*, 11 EBC 1072, 1083 (E.D.Wis. 1989), and the plaintiffs are entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Chipollini v. Spencer Gifts*, 814 F.2d 893, 896 (3d Cir.1987); Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2727 (Supp.1987).[4]

While we note that the employees may receive a windfall profit if the excess funds were simply the result of the employer's venerable "overabundance of caution," *CD Moyer*, 441 F.Supp. at 1132–33, and that such a result may create a strong incentive to underfund plans, it is easy enough for companies to protect themselves. Cf. *Fechter v. HMW Industries*, 879 F.2d 1111, 1120 n. 13 (3d Cir.1989) (awarding surplus assets to employees does not necessarily give them a "windfall"). They need only properly place the proper provision in the plan. See *Chait*, supra; *Fechter*, supra.

---

**4.** We recognize that there are two possible issues here. The first is whether § 14.02 together with the CBA *prevent an amendment* allowing reversion. The second is whether these same provisions affirmatively *prohibit* reversion such that any reversion would be a breach of contract. All the cases cited above dealt with the former, as does the instant case. Having decided earlier that the amendment was ineffective, we rest our decision on the lack of an express provision providing for reversion. Thus we need not decide whether the distribution was a violation of contract.

Politically or economically, that might be a difficult task, see Plaintiff's Brief at 49 ("during collective bargaining in 1984 ... *Murata proposed amendments to the Restated Plans that would have authorized reversion.* The union emphatically rejected these amendments, and they were withdrawn"), but we see no reason to relieve employers of necessity of bargaining for what they want. See Plaintiffs' Exhibit 24 (collective bargaining notes show an "objective" to "clarify and amend the plan [to eliminate ambiguities and] clearly state[ ] that any excess funding ... would be returned to the Co."). Our result is also consistent with ERISA's general solicitude for the rights of employees, see *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989), a solicitude which manifests elsewhere in analyses finding that silence favors the beneficiary and that terms which cut against the interests of beneficiaries must be clearly expressed. See, e.g., *Martin v. Masco Industries Employees' Benefit Plan,* 747 F.Supp. 1150 (W.D.Pa.1990).

### NATURE OF RELIEF

█ Because the distribution violated § 1344(d)(1) it "violate[d] [a] provision of this subchapter," 29 U.S.C. § 1132(a)(3), and the plaintiffs are entitled to equitable relief. 29 U.S.C. § 1132(a)(3). Furthermore, the plan provided that no amendment shall "vest in the Company any right, title or interest in or to the funds held by the Trustee," Plan § 14.02, and thus without the purported amendment, Murata's distribution to itself contravened its fiduciary duty to act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). See also Plan § 13.04(b) (provisions for distributing assets upon termination of the plan contain no mention of reversion to employer). Accordingly, plaintiffs are also entitled to an equitable remedy under 29 U.S.C. §§ 1109(a) and 1132(a)(3).

Plaintiffs merely list the remedies they seek without any supporting discussion while defendants do not address remedies at all. Plaintiffs seek a declaration that Murata has violated ERISA and its fiduciary duties thereunder, and we will so declare. Plaintiffs also seek a declaration that Murata has breached its contract, but we have declined to consider that issue and thus we will deny the request.

Plaintiffs also seek a reformation of the plan, a complete accounting from Murata as to all the surplus, a constructive trust on the surplus assets and profit and income therefrom, appointment of an independent trust administrator, damages, as well as costs and attorney fees. This court has "broad equitable powers" to fashion appropriate relief. *Delgrosso,* 769 F.2d at 937. Accordingly, we find that swift, accurate and complete relief will best be accomplished by (1) an accounting by Murata to identify the surplus funds and their profits followed by (2) seclusion of those funds by imposition of a constructive trust under the stewardship of (3) an independent trust administrator appointed by this court, and finally, (4) distribution of the funds to the plaintiffs by the administrator in accordance with the formula of 29 CFR § 2628.-32(a); *Delgrosso,* 769 F.2d at 938–39.[5]

We deny all other relief sought by the plaintiffs, including the request for attorney fees and costs. An appropriate order will issue.

### ORDER

AND NOW, this 7th day of March 1991, for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that:

(1) The Motion for Summary Judgment filed on behalf of Defendant, Murata Erie

---

**5.** ERISA § 409(a), 29 U.S.C. § 1109(a), requires that fiduciaries disgorge profits of misappropriated funds. That section, however, provides that the money be returned to the *plan,* and the plan in the instant case no longer exists. The constructive trust we impose, therefore, will serve as the functional equivalent of the terminated plan. Furthermore, this is a class action where plaintiffs seek recovery in a representative capacity and thus § 502(a)(2), 29 U.S.C. 1132(a)(2), provides for similar relief here. See *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1162 n. 7 (3d Cir.1990). Moreover, § 502(a)(3) (29 U.S.C. § 1132(a)(3)) may also allow for such relief in these circumstances.

North America, Inc., ("Murata") is DENIED.

(2) The Renewed Motion for Summary Judgment filed on behalf of the Plaintiffs, International Union of Electronic, Electric, Salaried, Machine and Furniture Workers, AFL–CIO, James R. Baldwin, Harry J. Layne, Rodney J. Pettinato, Pauline Rothermel, and Marlyn Thompson, individually and on behalf of a class, is GRANTED as to count II of the complaint. Judgment is entered in favor of the Plaintiffs, International Union of Electronic, Electric, Salaried, Machine and Furniture Workers, AFL–CIO, James R. Baldwin, Harry J. Layne, Rodney J. Pettinato, Pauline Rothermel, and Marlyn Thompson, individually and on behalf of a class.

(3) Count I of plaintiffs' complaint, relief under which is duplicative with count II, is DISMISSED AS MOOT. In accordance with this Court's memorandum opinion and order of July 30, 1990, pages 13–14, plaintiff International Union of Electronic, Electric, Salaried, Machine and Furniture Workers, AFL–CIO, is not an appropriate party to the relief under count II, and no relief is granted in its favor.

(4) IT IS DECLARED THAT The attempt to unilaterally and retroactively amend the Erie and Fryling plans undertaken by defendant Murata on October 25, 1985 to allow reversion of surplus assets in its own favor was ineffective and the operative plans are the 1977 and 1978 restated plans without the purported amendment. IT IS FURTHER DECLARED THAT By transferring the surplus assets remaining in the Erie and Fryling plans, defendant Murata, breached its fiduciary duty under ERISA, 29 U.S.C. § 1104(a)(1)(D), and violated 29 U.S.C. § 1344(d)(1).

(5) Defendant, Murata, is directed to provide an accounting, on or before May 5, 1991, to the court and to counsel for the plaintiffs, stating the status and location of all the funds transferred from the assets of the Erie and Fryling plans to Murata on September 5, 1989 and the profits derived therefrom.

(6) The funds listed in part (5) above (but in no event less than the original amount transferred) are the subject of a constructive trust for the benefit of the plaintiffs, James R. Baldwin, Harry J. Layne, Rodney J. Pettinato, Pauline Rothermel, and Marlyn Thompson, individually and on behalf of a class.

(7) The trust created in part (6) is to be administered by an independent administrator appointed by this court. The parties are directed to submit recommendations and any other material relevant to the selection of an appropriate administrator by March 25, 1991 with responses thereto due by April 1, 1991. The administrator is to distribute the assets of the trust created in part (6) in accordance with 29 CFR § 2628.-32(a).

(8) Motion for leave of absence of Michael A. Caldwell, Esq. on behalf of defendant, Murata, is DENIED AS MOOT.

(9) Motion, on behalf of plaintiffs, for oral argument on cross-motions for summary judgment is DENIED AS MOOT.

(10) Motion, on behalf of plaintiffs, to compel answers to interrogatories is DENIED AS MOOT.

(11) Motion, on behalf of plaintiffs, to determine the sufficiency of answers to request for admissions is DENIED AS MOOT.