Gordon OUTZEN, on behalf of himself and as a representative party and member of a class consisting of employees of the former, but now insolvent, Stockmens Bank and Trust Company, a Wyoming Banking Corporation, who also are participants in the pension plan of the said Stockmens Bank and Trust Company and that certain pension plan trust fund thereunder maintained, Plaintiff–Appellee,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, acting Ex Rel. the STATE EXAMINER OF BANKS OF the STATE OF WYOMING, as the receiver of the now insolvent Stockmens Bank and Trust Company, a Wyoming Banking Corporation, and as such, also the successor to the said Stockmens Bank and Trust Company as sponsor and ad-

ministrator of the pension plan of the Stockmens Bank and Trust Company and successor corporate trustee of that certain pension plan trust fund thereunder maintained, Defendant–Appellant.

No. 90–8077.

United States Court of Appeals,
Tenth Circuit.

Nov. 8, 1991.

Robert James Wyatt, of Burgess, Davis, Carmichael & Cannon, Sheridan, Wyo., for plaintiff-appellee.

John F. Zabriskie (Thomas M. Hogan with him on the brief) of Hopkins & Sutter, Chicago, Ill., for defendant-appellant.

Before MOORE and EBEL, Circuit Judges, and ANDERSON,* District Judge.

* Honorable Aldon J. Anderson, Senior United States District Judge for the District of Utah, sitting by designation.

JOHN P. MOORE, Circuit Judge.

The FDIC, as receiver of the Stockmens Bank and Trust Co. of Gillette, Wyoming (Stockmens), appeals from the district court's grant of summary judgment in favor of Gordon Outzen, the class representative for former employees of Stockmens who were participants in Stockmens' pension benefit plan (the Plan). Plaintiffs sued the FDIC for possession of certain assets of the Plan which the FDIC, as receiver, had moved into a separate account. Specifically, the district court ruled (1) the FDIC, as receiver, did not have a reversionary interest in the Stockmens employee pension fund after all liabilities were paid to all claimants, and that the surplus assets belonged to former employees who had participated in the retirement plan; (2) the FDIC breached its fiduciary duties to plaintiffs by placing the assets in a separate account; and (3) counsel for plaintiffs should be awarded attorney's fees out of the excess assets. The issue now before us involves the interpretation of Stockmens' pension benefit plan and implementing trust agreement (the Trust Agreement) in light of the requirements of the Employee Retirement Income Security Act (ERISA) of 1974. 29 U.S.C. § 1001 *et seq.*

We review the issue as a question of law *de novo*,[1] and reverse, with directions to the district court to vacate the judgment and enter judgment in favor of the FDIC. We therefore do not reach the second holding of the district court, and we award costs on appeal to the defendant.

Stockmens established the Plan in 1963, and created the Trust Agreement contemporaneously to administer its terms. The Plan was substantially amended in 1976 to conform to the then newly passed ERISA. The Plan was a "defined benefit plan" from the start, with all contributions being made by Stockmens according to a fixed schedule of benefits for the participants set out in section 5 of the Plan.[2] Stockmens' intent to fund the Plan in 1976 was explained in section 4.2, "to make contributions ... which, over a period of years, will meet the cost of the retirement benefits herein specified ... in such amounts and at such times as the Employer, through its actuary, shall from time to time determine." Stockmens made periodic contributions to the Plan to ensure sufficient assets existed. No contributions were ever made by individual participants.

In 1983 the Plan was again amended. The change provided for the reversion of any surplus funds to the employer in the event of the Plan's termination. In 1987 Stockmens was declared insolvent. The FDIC was appointed receiver and charged with assembling the bank's assets and paying off creditors. After satisfying the administrative costs of the pension plan and the defined benefits of the participants in full, the FDIC determined that the Plan was "overfunded" in excess of $600,000.00, and moved the funds into a separate account.

The determinative issue before us is whether the provisions of the Plan, construed with the Trust Agreement and in light of the policies of ERISA, allow for a reversion of surplus pension funds to the sponsor, and therefore to the FDIC as receiver. Sections 404(a)(1)(A) and 403(c)(1) of ERISA require the fiduciary of a plan to discharge its duties solely for the benefit of the participants and their beneficiaries, and state the assets of the plan should not inure to the benefit of the employer. 29 U.S.C. §§ 1104(a)(1)(A), 1103(c)(1). Stockmens' 1976 Plan added this "exclusive benefit rule" in two provisions.

1) Article Third of the Trust Agreement states:

---

1. *FDIC v. Bank of Boulder*, 911 F.2d 1466 (10th Cir.1990) (*en banc*) *cert. denied*, —— U.S. ——, 111 S.Ct. 1103, 113 L.Ed.2d 213 (1991).

2. "Defined benefit plans," under section 3(35) of ERISA, 29 U.S.C. § 1002(35), differ from "defined contribution plans" in which employees accrue benefits in individual accounts established by the employer solely according to "the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." Section 3(34) of ERISA, 29 U.S.C. § 1002(34).

Notwithstanding anything to the contrary contained in this agreement, or in any amendment thereto, it shall be impossible, at any time *prior to the satisfaction of all liabilities* with respect to the members under the Plan or their beneficiaries, for any part of the Trust Fund, other than such part as is required to pay taxes and administrative expenses, to be used for, or diverted to, purposes other than for the exclusive benefit of the members under the Plan or their beneficiaries (emphasis added).

2) Section 11.4 of the 1976 Plan states: *Nondiversion of Funds.* This Plan is created for the exclusive benefit of the Participants and their beneficiaries. Under no circumstances shall any funds be contributed under the Plan or the net earnings thereon ever be used for, or diverted for purposes other than for the exclusive benefit of such Participants, or their beneficiaries.

ERISA's exclusive benefit rule contains a statutory exception, however, which provides three conditions under which residual assets of a defined benefit pension plan funded solely by the employer may be distributed to the employer upon plan termination. Section 4044(d)(1) of ERISA provides for reversion of assets to the employer if "[1] all liabilities of the plan to participants and their beneficiaries have been satisfied, [2] the distribution does not contravene any provision of law, and [3] the plan provides for such a distribution in these circumstances." 29 U.S.C. § 1344(d)(1).

The Stockmens' Plan did provide in 1983 for a reversion of residual assets at plan termination. The Plan was amended to include section 14.6 which states:

*Amounts Returnable to the Employer:* In no event shall the employer receive any amounts from the Trust, except such amounts, if any, as set forth below:

(1) Upon termination of the Plan and not withstanding any other provision of the Plan, the Employer shall receive such amounts, if any, as may remain after the satisfaction of all liabilities of the Plan to Employees and their beneficiaries, and arising out of any variations between actual requirements and expected actuarial requirements.

Plaintiffs contend, and the district court held, the 1983 amendment permitting reversion to the employer of any Plan overfunding violates the exclusive benefit provisions of the Plan and is void. The court reasoned that the language of section 11.4 of the 1976 Plan, "[u]nder no circumstances shall any funds be contributed under the Plan or the net earnings thereon ever be used for, or diverted for purposes other than for the exclusive benefit of such Participants, or their beneficiaries," evidenced an intent to go beyond the standard exclusive benefit language of ERISA to prohibit any future amendment allowing reversion of surplus funds on termination of the Plan.

Such a reading does not follow the case law and would be contrary to the policies of ERISA. Although the district court correctly perceived the case law in this area dictates careful scrutiny of the language of the documents creating the particular plan involved, citing *Bryant v. International Fruit Products, Inc.*, 793 F.2d 118, 123 (6th Cir.1986), *cert. denied*, 479 U.S. 986, 107 S.Ct. 576, 93 L.Ed.2d 579 (1986), we do not believe the Stockmens' Plan falls within the *Bryant* line of cases relied on by the district court. The language of the Stockmens documents does not suggest an intent to go beyond ERISA's exclusive benefits requirements. The Plan therefore allows the statutory exception of reversion of assets to the sponsor.

The *Bryant* court held participants in a defined benefit plan had a right to surplus funds at plan termination. The court found the plan "unequivocal" in prohibiting recapture of funds by the employer, rendering the amendment allowing reversion unlawful. *Id.* at 123. In that case, the exclusive benefit clause stipulated that "*[i]n no event and under no circumstances shall any contributions* to this Trust by the Employer, nor any of the Trust Estate or the income therefrom revert to or be repaid to the Employer." *Id.* at 122 (emphasis added by *Bryant* court). The court considered the explicit mention

of "contributions by the Employer" significant, noting that employees were assured no money contributed by the company could ever be reclaimed.[3] *Id.* The Stockmens' 1976 documents, in contrast, speak of neither reversion nor repayment, nor contributions. The cases which allow reversion as well as those which preclude it all dictate that strong, express prohibitory language is necessary to block employer recapture of surplus pension funds in a defined benefit plan.

The prohibitory language of the exclusive benefit clause in *In re C.D. Moyer Co. Trust Fund,* 441 F.Supp. 1128, 1131–33 (E.D.Penn.1977), *aff'd. without opinion,* 582 F.2d 1273 (3d Cir.1978), for example, is stronger than that contained in the Stockmens Plan. The court in that case permitted a reversion of assets in a defined benefit plan where it was:

> at all times … impossible, if any amendment or revocation be made pursuant to this provision, for any of the trust corpus or income to be diverted or to revert to … the employers or to be used for any purpose other than the exclusive benefit of the participants or their beneficiaries.

The court reasoned that "trust corpus or income" referred only to the amounts needed to satisfy the participants' claims, and not the excess.[4]

In *Washington–Baltimore Newspaper Guild Local 35 v. Washington Star Co.,* 555 F.Supp. 257 (D.D.C.1983), *aff'd without opinion,* 729 F.2d 863 (D.C.Cir.1984), where former employees sought to enjoin the Washington Star Company from appropriating surplus pension assets, the court held in the absence of an agreement to the contrary, participants in a defined benefit plan had no right to a windfall resulting from the employer's overly generous contributions to the plan. *Id.* at 261. The trust prohibited reversion "prior to satisfaction of all liabilities," and stated no funds could be "returned to the Employer or be used for, or diverted to, purposes other than for the exclusive benefit of employees covered by the Plan…." *Id.* at 258–259. The court found the trust language ambiguous in its intent to address a plan surplus, and held the exclusive benefit clause prohibiting "diversion" permitted the employer to retain any surplus funds. *Id.* at 261.[5]

Similarly, in *Chait v. Bernstein,* 835 F.2d 1017 (3d Cir.1987), the court stated to preclude reversion there must be additional language limiting reversion which goes further than the exclusive benefit clause, *id.* at 1018, 1027, noting reversion has been precluded when there was a "direct relationship between surplus and expected employee benefits." *Id.* at 1025. Neither condition is met in this case.

First, the language of section 11.4 of the 1976 Plan does not speak specifically of reversion or repayment to the employer, but only of use or diversion of funds. Insofar as the 1976 Stockmens documents evidence intent regarding funding of the Plan, it is that the employer will "make contributions … which, over a period of years, will *meet the cost of the retirement benefits herein specified* … in such amounts *as the Employer,* through its actuary, *shall from time to time determine.*"[6] We do not accept plaintiffs' argument that the "satisfaction of all liabilities" clause, on which construction of Article Third of the Trust Agreement depends, was intended to comprise both assets *and* liabilities. There is thus no employee expectation of benefits beyond those defined by the Plan and can be no "direct relationship" between expectations and the surplus. *Chait,* 835 F.2d at 1025.

---

**3.** *See also Delgrosso v. Spang & Co.,* 769 F.2d 928, 935–36, (3d Cir.1985), *cert. denied,* 476 U.S. 1140, 106 S.Ct. 2246, 90 L.Ed.2d 692 (1986) (defined contribution plan denied reversion on basis of language stating "contributions made by Company hereunder may not, under any circumstances, revert to the Company").

**4.** *See also In re Gulf Pension Litigation,* 764 F.Supp. 1149, 1184–85 (S.D.Tex.1991).

**5.** *See also Lynch v. J.P. Stevens & Co.,* 758 F.Supp. 976, 993–94 (D.N.J.1991).

**6.** Section 4.2 of Stockmens Employee Pension Plan, as Amended and Restated Jan. 1, 1976, Plaintiffs' Complaint, Exhibit B (emphasis added).

In addition to our belief that the language of the Stockmens documents does not establish an unequivocal prohibition on reversion, concerns with both equity and the policy goals of ERISA favor the FDIC in this case. The most important policy guideline for us is set out in *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), that "courts ... always bear in mind the ultimate consideration whether allowance or disallowance of particular relief would best effectuate the underlying purposes of ERISA—enforcement of strict fiduciary standards of care in the administration of all aspects of pension plans and promotion of the best interests of participants and beneficiaries."[7] In *Chait*, the court believed penalizing employers for overfunding defined benefit plans would lead to the counterproductive result of an "overabundance of caution," and the underfunding of employees' pension benefits. *Chait*, 835 F.2d at 1027, citing *Wright v. Nimmons*, 641 F.Supp. 1391, 1407 (S.D.Tex. 1986). We think the same concern applies here.

The overall policy of ERISA is to protect participants' expected payments. This policy is mandated through the exclusive benefit clause. We are persuaded in this case, however, that the statutory exception allowing reversion of excess funds to the sponsor governs. 29 U.S.C. §§ 1104(a)(1)(A), 1103(c)(1), 1344(d).

There is a further equitable consideration. Allowing the FDIC to recover the surplus assets will accomplish another important purpose without compromising ERISA's goal of protecting employees' expected benefits. The participants have been paid 100% of their claims based on their defined benefit, and their logical expectations have been realized. Stockmens' creditors, however, have received payment of only approximately one-third of their claims. An award of the Plan's surplus to the FDIC would increase, though not satisfy fully, the return on these claims. The equity of this result is self-evident.

Our reading of the case law, ERISA policy, and equitable concerns persuade us to hold that the pension fund surplus assets should be distributed to the FDIC as receiver for Stockmens Bank and Trust Company. Consequently, we do not consider the district court's second holding that the FDIC violated its fiduciary duties to the plaintiffs. Because attorney's fees can only be awarded under ERISA to the prevailing party, 29 U.S.C. § 1451(e),[8] the third holding of the district court awarding attorney's fees to the plaintiffs is also reversed. The judgment is REVERSED AND REMANDED to the district court with directions to enter judgment in favor of the defendant.

---

7. *Massachusetts Mutual Life Ins. Co.*, 473 U.S. 134 at 158, 105 S.Ct. 3085 at 3098 (Brennan, J., concurring), as cited in *Chait*, 835 F.2d at 1027.

8. 29 U.S.C. § 1451(e) provides: "In any action under this section, the court may award all or a portion of the costs and expenses incurred in connection with such action, including reasonable attorney's fees, to the prevailing party."